# MARCH, 1925.

Pearl Musselman v. The State.

No. 8827.    Delivered March 18, 1925.

Rehearing denied June 26, 1925.

### 1.—Murder—Evidence—Of Accused—On Trial of Co-Defendant.

Where on a trial for murder the appellant had introduced a part of her testimony given at a habeas corpus hearing and on the trial of a co-defendant, and the State then introducing the remainder of such testimony, the State was not bound by any exculpatory statements contained in that part of her testimony introduced by the state.

### 2.—Same—Evidence of Witness—Confession—Distinction Between.

There is a broad distinction between the rule governing a confession of an accused, introduced by the State, and the testimony of the accused given upon another trial.    The State is bound by exculpatory statements in a confession, unless disproven while the testimony of the accused, given on a former trial has the same evidential character as the testimony of any other witness, and is admissible as original evidence.    Distinguishing Casey v. State, 54 Tex. Crim. Rep. 587, Pickens v. State, 86 Tex. Crim. Rep. 660, Pratt v. State, 50 Tex. Crim. Rep. 227 and Forrester v. State, 93 Tex. Crim. Rep. 415.

### 3.—Same—Charge of Court—Defensive Issue—Must be Submitted.

Where testimony of the accused, given at a former trial is introduced, all defensive issues presented in such evidence should be submitted to the jury, and where complaint is made of the charge submitting such defensive issues, the complaint must be made by a specific objection embraced either in a written objection to the charge, or a special charge so framed as to pertinently make known to the trial court the complaint relied upon.    See Boaz v. State, 89 Tex. Crim. Rep. 815 and other cases.    Arts. 735-737-737a and 743 C. C. P.

### 4.—Same—Requested Charges—Covered by Main Charge—Properly Refused.

Several charges were requested by appellant submitting different phases of the defensive issue of duress.    This issue was fully and correctly presented in the court's main charge, and no exception was taken to the submission of this issue in the main charge, and such requested charges were properly refused.    Following Regittano v. State, 96 Tex. Crim. App. 477.

### 5.—Same—Change of Court—Practice on Appeal—Art. 743.

Under Art. 743 C. C. P. it is declared that a non-observance of the statutory directions touching the substance of the court's charge to the jury *shall not work a reversal, unless calculated to injure the rights of the accused, or unless it appears that a fair and impartial trial has not been accorded the*

*accused.* Tested under this rule we find nothing in the court's charge in this case which would call for a reversal.

### 6.—Same—Continuance—Diligence—Discretion of Court.

Where a motion for a continuance is made on the ground of absent witnesses, for whom no legal diligence is shown, and the refusal of such continuance complained of in the motion for a new trial, the court below is vested with the discretion to refuse the new trial, if in the light of all the facts as heard by him, no injury has been done appellant, nor a different result appearing probable upon another trial.

### 7.—Same—New Trial—Rule Stated.

It is only in exceptional cases that this court would be warranted in reversing a judgment of conviction approved by a trial judge because a continuance is denied, where no legal diligence is shown. The rule, correctly stated is that "It is only in a case where, from the evidence adduced on the trial, the appellate court is impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted." Branch's Ann. Tex. P. C. Sec. 319. Covey v. State, 23 Tex. Crim. App. 391 and numerous other cases cited.

#### ON REHEARING

### 8.—Same—Charge of Court—Not Excepted to—No Error Presented.

Appellant in his motion for rehearing submits various objections to the court's charge in this case. No exceptions were taken to the charge in the manner prescribed in our practice. We again call attention to the fact that this court will not consider objections to the court's charge which are raised here, on appeal, for the first time.

Appeal from the District Court of Shelby County. Tried below before the Hon. Chas. L. Brachfield, Judge.

Appeal from a conviction of murder; penalty, fifteen years in the penitentiary.

The opinion states the case.

*Dallas Ivey* and *H. B. Short,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of fifteen years.

The companion case of Jim Ballew v. State, is reported in 260 S. W. Rep. 1046. The evidence in the present trial is not different from that which led to the conviction of Ballew save that in that trial the appellant in the present case testified as a witness for the State entailing the necessity for corroborative evidence. In the present case, her testimony upon the trial of Ballew, as well as upon the habeas corpus trial in which he sought bail, was reproduced.

101 Tex. Crim.—7.

She introduced in evidence part of her testimony on the former hearings and the State then introduced the remainder. The record in the present case shows no objection to this proceeding.

The testimony given by the appellant upon the former trial does not bear the characteristics of a confession. The State was at liberty to produce it upon the present trial as original evidence. See Collins v. State, 39 Texas Crim. Rep. 447; Kirkpatrick v. State, 57 Texas Crim. Rep. 17; Branch's Ann. Texas P. C., Sec. 80. Any exculpatory evidence embraced in the reproduced testimony was available to the accused, and if such matter presented a defensive theory, it would be incumbent upon the court to submit it to the jury, but the procedure disclosed did not, in our judgment, call for an application of the principle announced in Pharr's case, 7 Texas Crim. App. 473, in which it was declared in substance that where the State relied upon the confession of the accused to show that the accused had committed the offense, and in the confession there was an exculpatory statement, it was incumbent upon the court to instruct the jury that this exculpatory statement having been introduced by the State was to be considered as true unless disproved.

From what has been said it follows that in the opinion of this court, the refusal of appellant's requested charge No. 8 to the effect that the State having used the appellant as a witness upon the trial of Ballew, and reproduced her testimony upon the present trial, was bound by her statements and that unless from all the evidence they should believe beyond a reasonable doubt that appellant was a principal in the killing of the deceased, as the term "principal" was defined in the charge, an acquittal should result. As indicated above, we think the court was not required to instruct the jury that the State was bound by the exculpatory statements in the appellant's testimony. Casey v. State, 54 Texas Crim. Rep. 587. The rule requiring such a charge as stated is not of universal application. See Pickens v. State, 86 Texas Crim. Rep. 660, and numerous cases cited therein. So far as the writer is aware, this rule is confined to cases in which the State takes the initiative and introduces a confession or admission of the accused made out of court. Such was the case in Pratt v. State, 50 Texas Crim. Rep. 227; Forrester v. State, 93 Texas Crim. Rep. 415, and numerous other cases to which reference is there made.

The procedure adopted in the case now under consideration is novel in that without objection the State permitted the accused to introduce as original testimony the stenographer's report of the appellant's testimony given upon the trial of Ballew, and the State then, without objection, reproduced the testimony given by her upon the same trial. She is not in a position to claim that the exculpatory declarations contained in the part of her former testimony which

she introduced were put in evidence by the State and thereby avail herself of the rule for which she contends and which is asserted in Pharr's case, supra, and others. Neither can she, in our judgment, avail herself of that rule with reference to the exculpatory declarations contained in the part of her testimony embraced in her cross-examination upon the former trial which was introduced in evidence in this trial for the reason, as stated above, that the cross-examination was explanatory of the testimony introduced by her, and a part of the same transaction comes, as we conceive it, properly within the terms of Art. 811, C. C. P., declaring that when part of a declaration is introduced by one party, the remainder may be introduced by the other party.

There was no exception to the court's charge for the failure to take note of the exculpatory declaration. However, cognizance was taken of it as is manifested by the 8th and 9th paragraphs of the court's charge, which read thus:

"(8)   Our statutes provide that a person forced by threats or actual violence to do any act is not liable to punishment for the same. Such threats, however, must be: (1) Loss of life or personal injury; (2) They must be such as are calculated to intimidate a person of ordinary firmness.

"(9)   Now if you believe from the evidence that the defendant, Pearl Musselman, by reason of threats previously made by Jim Ballew, if any were made, was in fear of the loss of her life, or personal injury, or that said threats, if any were calculated to intimidate the defendant, and that said threats of violence, if any, were such as to restrain the defendant from escaping, or such as to render her incapable of resistance, she would be under duress and not liable to punishment, and if you so find, you will acquit her."

In the brief, it is suggested that paragraph 9 of the charge is faulty in the use of the words "if you believe from the evidence that the defendant was in fear of the loss of life, etc." This being a submission of the defensive theory, it would not have been proper that the court instruct the jury that they must believe the testimony upon which she relied upon beyond a reasonable doubt. To have so instructed would have turned the reasonable doubt against her and not in her favor. Moreover, the complaint was not pointed out by an exception at the time of the trial. Even if the instruction given were incomplete, the court having charged the jury on the exculpatory theory arising from the appellant's reproduced testimony was not bound to amend its charge upon that subject in the absence of a specific objection embraced either in a written exception to the charge or a special charge so framed as to pertinently make known to the trial court the complaint relied upon. See Boaz v. State, 89 Texas Crim. Rep. 515; Parker v. State, 261 S. W. Rep. 784; C. C. P., Arts. 735, 737 737a, and 743.

Another special charge requested was in substance that if by reason of threats calculated to intimidate a person of ordinary firmness and which did intimidate the appellant and contributed to influence her in becoming an actor in the homicide, there should be an acquittal.

In another special charge there was a request to instruct the jury that in passing upon the question of duress, all the facts and circumstances introduced in evidence should be taken into consideration.

Neither of these charges is tenable for the reason that, as stated above, they related to a subject which was submitted to the jury, namely, that of duress, against which there was no exception to the charge directed. The special charge did not, in our judgment, point out any such defect in the main charge as would warrant us in reversing the judgment. See Regittano v. State, 96 Texas Crim. Rep. 477.

Passing all technical obstacles to the full consideration of the criticisms of the charge of the court and its refusal of the requested charges, we are constrained to regard them as void of any matter which would justify a reversal of the judgment, when viewed in the light of Art. 743, C. C. P., wherein it is declared that a non-observance of the statutory directions touching the substance of the court's charge to the jury *shall not work a reversal unless calculated to injure the rights of the accused, or unless it appears that a fair and impartial trial has not been accorded the accused.*

The State's theory, coming from several witnesses, was that the appellant had conspired with Ballew to cause an insurance policy to be issued upon the life of deceased, and that one of the motives which inspired the homicide was the desire to realize upon this insurance policy. Walker, an insurance agent, testified that the appellant came to his office and discussed the matter of insurance upon the life of the deceased, and that upon her admission, this occurred before their marriage. This appellant denied. In her testimony she gave evidence that she and Ballew had discussed the insurance several times. According to her evidence, she had received the insurance policy and had afterwards directed Mr. Walker to take the policy and put it in the bank. Two or three days before the homicide. Walker brought the insurance policy to the appellant and collected fifty dollars which the deceased had left with her for the purpose of paying the premium. Ballew knew of the arrival of the policy before the appellant did, he having learned it from Walker. Ballew told her that the policy had a flaw in it, and asked that he be given possession of it. This she declined to do, however. She had also declined to give Ballew the address of her husband for fear, she said, that Ballew would kill him. Ballew finally secured the address by intercepting letters and learned that the deceased was at Richmond, Texas. She said that Ballew induced her to write

a Ku Klux letter to her husband, telling him to return to Houston; that after writing this letter at Ballew's dictation, she wrote another without his knowledge, advising her husband not to come. However, these letters were not shown to have reached the deceased. He came to his home early in the morning and remained with him family until night, when Ballew appeared. Touching what followed, we quote from the appellant:

"He (meaning Ballew) came in and said, 'Howdy do,' and 'how are you all?' and asked Tom when he came in, and Tom told him he 'got in this morning.' He asked did he come from Houston, and he said, 'No, he came from Richmond.' My sister then asked him to sit down, and he said, 'No, I haven't got time'; and he walked out by the door and there was a gun setting there, and he picked up the gun and walked out on the front porch. He said, 'I believe I will borrow you alls gun', and walked out on the front porch, and motioned his head for me to come there and I walked on the front porch where he was. He said then, 'Pearl,' he says, 'if you want to make your days long, you better get Tom to come along, but if you want to make them short, by God, just stay in there.' I told him, 'I just can't do it; I just can't do nothing like that.' He says, 'Let me tell you; there is no dispute between us'. He was talking low, and he says, 'I can tell you how to do this, and you better do it. You tell Thom that there is a party up to Childers' somewhere, and that I am there, and you feel uneasy about me, and let's go see about him.' And he says, 'When I whistle I will be behind the garden and you had better come.' I then went back in the house and sat down, but didn't stay but a few minutes until Jim whistled. Then I told Tom that Jim was over at a party and he must be in some kind of trouble, and let's go and see about it, and Tom said, 'All right; let's go'; and we went right out the back door, or the hall door on the little porch and stopped there at the side gate that goes down to the coal mine and through that. We went on out to the garden and met Jim there, and he said, 'Where have you all started?' and Tom said, 'We have started to the party to see about you', and Tom said he was uneasy about him, and so Jim says, 'Let's go over there; they are having a big time; I had started back to tell you.' So Tom says, 'All right; we will do that,' and we went. Jim had the gun and we all left the garden together. We were not walking side by side; we were all going just like geese—one after the other; Jim had Tom in the lead going down a little trail, and Jim was behind Tom and I was behind Jim. Jim was carrying the gun across his shoulders this way. We went way over there in the sedge field somewhere. While they were going down there they talked about oil leases and oil royalties. As to what was the first thing that attracted my attention to the fact that there was about

to be or was a shooting. I will state that I knew about that when I went out. I didn't know where it would be, or nothing about that. We went way down in the sedge grass before the shooting happened; I know I waded up to here. I don't know just how Jim done that shooting; he had the gun down in his hand; I wasn't paying attention to how it was done.''

Appellant then proceeded to tell that Jim Ballew fired one shot, got the money and a watch belonging to deceased and went back with the appellant to the home of her mother, in the meantime threatening to kill appellant if she told what he had done, and directed her to throw the gun away, or to destroy the old gun. Appellant told Ballew that she could not do that as the gun belonged to Mr. Berryman. He also told her that he would see that she never suffered for anything in this wide world, telling her in this connection that deceased might have carried her off and poisoned her and also that she would likely be put in jail and an effort made to scare her and make her tell, and that she had better keep her mouth or he would kill her. Appellant also testified that she was very much frightened and after telling her mother that Ballew had kill her husband, she afterwards said that it was not true and showed her mother the two shells that had been in the gun all of the time. Appellant testified further:

''As to what conversation we had coming back to the house with reference to the insurance, Jim told me, 'Don't worry about my killing Tom, thinking you will not get your insurance, you will get them, because me and Mr. Walker will see that you get it.' When he killed Tom, he said, 'That son of a bitch won't bother or worry anyone else.' That was right after he shot him. As to whether anything was said about me getting all the insurance or him part of it, I will state that he had done said he would get part of it, but didn't say what part I would get. That was on the way back from the body to the house. As to why I took my husband out and let him be murdered, I was just scared; he scared me into doing it; I was scared he was going to kill me. He would have killed me that night; he would have shot me so full of holes, like he done Tom, and maybe all my people, to keep it down, because he said he would do that. He told me that lots of times and told me if I told this on him, he would kill me. He told me if they got me in court, I 'damn sure better hold my head and not let nothing slip.' ''

On cross-examination of the appellant on the habeas corpus trial of Ballew, introduced by the State, she testified about the deceased thus:

''I did not take him out to get him killed; I knew I could not get the insurance for any such mess. I took him out because the man told me I better take him out, and I knew he would kill me too.

He would treat me just (as) he done Tom. As to whether I thought it safer to take him down in the woods and get him killed, I will say I was scared to say anything. We didn't agree to divide the insurance money. I didn't think of dividing the insurance money. I thought I would spend every nickel to have his neck broke.''

A motion to continue the case was made. The indictment was filed on the 6th day of March, 1923. The trial took place on the 21st day of March, 1924. Appellant, during the interval, was confined in jail. According to the motion for a continuance, she was represented up until the first day of March by an accomplished and capable lawyer who ceased to represent her on the 17th day of February, 1924. Under his guidance, she had testified upon the habeas corpus hearing and upon the trial of Ballew. After her attorney had ceased to represent her, the court appointed counsel who represented her upon the trial and upon this appeal.

The application for a continuance named twenty absent witnesses. According to the averment in the motion, these witnesses were desired to corroborate the truth of the appellant's statements. But little details are given with reference to what each particular witness would testify, but so far as they are given, they relate to testimony corroborative of some of the appellant's declarations as contained in her testimony touching the manner in which she became acquainted with her husband, and contradicting the statements of the witness Walker touching her connection with the insurance policy. As we understand it, the prevailing idea in the motion for a continuance is that there had been developed for the appellant no defensive theory save that of duress, and that upon that issue she relied upon her testimony alone. The theory was advanced in the motion that a conspiracy to obtain an insurance policy upon the life of the deceased and to kill him had been formed by Jim Ballew, the State's witness Walker, who was an insurance agent, and other persons unknown to the appellant, her position being that she was not a party to the conspiracy. None of the witnesses named in the motion were desired to controvert the facts immediately attending the homicide as developed from the testimony of the appellant. The motion for a continuance was controverted by the sworn statement of the district attorney to which, according to the recital, was attached the certificate of a reputable physician to the effect that the witness Maud Jones was permanently disabled and that her condition was such that diligence would demand the taking of her deposition. In qualifying the bill, the trial judge certified that all of the witnesses named in the motion were in attendance upon the trial except four, whom he named. One of these was Maud Jones, a sick sister of the appellant. Another was Mrs. McKnight, who was a resident of Nacogdoches County. Another was Grover Isom, who was supposed

to be in Harris County. Another was Mrs. Samford, who was a resident of Shelby County but who was temporarily absent in Williamson County. The record fails to show that any additional process was sought for the absent witnesses, and on the whole matter, there is an absence of diligence. In fact, there was no semblance of diligence to secure the attendance of any of the witnesses. To excuse this, the fact that the attorney who, for about a year after the indictment, had represented the appellant had not deemed it necessary, advisable or expedient, or for some reason, had not caused the issuance of process for any of the witnesses named, nor had the appellant done so, nor had any effort been made to take the deposition of the witness Maud Jones. In the controverting affidavit is the statement that the application for a continuance was not the first but the third, and by agreement the case was continued at the June and October terms, 1923. The learned counsel for the appellant does not seriously contend that the rule of diligence was complied with but advances the theory that an equitable showing was made and relies upon the case of Cooper v. State, 72 Texas Crim. Rep. 645 and others.

It is only in exceptional cases that this court would be warranted in reversing a judgment of conviction approved by the trial judge because the continuance was denied when no legal diligence was shown to secure the attendance of the witnesses. See Branch's Ann. Texas P. C., Sec. 314, and numerous cases cited; also Sec. 319. If the ends of justice demanded, certainly the trial judge should grant a new trial where an application for a continuance has been denied, which in the light of the testimony adduced upon the trial, is material and probably true, and in a proper case, the failure to grant a new trial under such circumstances might be evidence of an abuse of the discretion of the trial judge, even though the showing of diligence was insufficient. See Casinova v. State, 12 Texas Crim. App. 554, and other cases cited by Mr. Branch in his Ann. Texas P. C., Sec. 319. In the same section, however, Mr. Branch deduces from Covey v. State, 23 Texas Crim. App. 391, and numerous other cases cited, a statement which is correct and which follows:

"It is only in a case where, from the evidence adduced on the trial, the Appellate Court is impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted."

Tested by the rule stated and taking into account the testimony adduced upon the present trial, no doubt is entertained that the learned trial judge exercised proper discretion in refusing to continue the case and in declining to grant a new trial upon the ground of absent testimony.

The commendable fidelity and skill with which counsel for appellant have performed the obligation imposed upon them through appointment as representatives of the accused is made manifest by the record, showing the conduct of her case on the trial and the brief and argument presenting the appeal to this court. Pitiable as is the plight of this young woman, misguided perhaps, by an older head and a stronger will, and drawn on by the unworthy object of her affections, we conceive that duty leaves open to this court no course other than to order that the judgment of conviction be affirmed. This is accordingly done.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In an extended motion for rehearing appellant argues various supposed defects in the charge, and we again call attention to the fact that there was no exception taken to said charge, and hence we are in no position to discuss or consider objections here raised for the first time.

Complaint is renewed of our failure to hold it reversible error for the court to refuse special charges Nos. 9, 10 and 11. Referring to the last special charge named, we see no reason in this case to believe it erroneous for the court not to have given a charge instructing the jury that they should take into consideration all the facts and circumstances of the case in deciding whether or not the accused acted under duress; nor do we observe any advantage to be gained by appellant by the submission of special charge No. 10 which merely presented in a different form, matters covered by the main charge of the court.

In regard to special charge No. 9, we observe that appellant did not take the stand in this case and testify that she aided, advised or encouraged the killing, or was otherwise a principal to the killing of her husband because of any specific threats made by Jim Ballew, nor do the facts in the record otherwise than a few expressions of appellant as given in her testimony upon the trial of said Ballew, and in his habeas corpus hearing, sustain or support the proposition that she acted in the premises through fear of loss of life or personal injury, or from threats of such character as rendered her incapable of resistance. We are inclined to believe that under the facts of this case appellant's defensive theory, if any was raised by her testimony as given on Ballew's trial, which was introduced in this case, in support of the proposition of acting under duress, would be governed by the rule laid down by our legislature in Art. 52 of our P. C., which provides that when the facts have been proved which constitute the offense, it devolves upon the accused to establish

the facts or circumstances on which he relies to excuse or justify the prohibited act or omission. The court having given in the general charge, reasonable doubt as applicable to the whole case, and having instructed the jury specifically in regard to the defense of duress, and the facts tending to support said defensive theory appearing in the condition that they are, we think we correctly applied the rule of Art. 743 of our C. C. P. which forbids the reversal of a case for any error in the charge unless it was such as, in the opinion of this court, was calculated to injure the rights of the appellant. The undisputed facts in the case show that appellant had been writing letters to and having conversations with Ballew for some time prior to the date of the killing indicative of a conspiracy; that the threat relied upon by her as having been made by Ballew was directed solely at the proposition of her inducement to her husband to come out to where Ballew was. The uncontroverted facts show that after she induced her husband to go to where Ballew was on the night of the homicide, she then went without any threats or compulsion of any character whatever, with the two men to a point a mile or mile and a half away at which place Ballew shot and killed deceased. Nothing appears in the record to indicate but that appellant could have desisted after she had taken deceased to where Ballew was, and she could have taken her departure or gone away at any time between that point and where the killing occurred.

Upon this record we are not impressed with the facts that appellant has not had a fair and impartial trial and the motion for rehearing will be overruled.

*Overruled.*