ELTON TUCK V. STATE.

No. 24628. May 31, 1950.
Rehearing Denied June 23, 1950.

114

*J. E. Flowers,* Baytown, and *Percy Foreman,* Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. T. Branch* and *O'Brien Stevens,* Assistants Criminal District Attorney, and *Spurgeon E. Bell,* all of Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The allegation in the indictment upon which appellant was convicted was that appellant killed deceased by driving an automobile onto and across her body. The punishment assessed was twenty-five years in the penitentiary.

We are unable to perceive any material defect in the indictment, and appellant's motion to quash was properly overruled.

About 8:30 o'clock on the night of June 26, 1947, deceased (Mrs. Lester Gertrude Crowell), and her friend, Stella Probst, were seated at a table in a beer tavern drinking beer. Appellant entered the place and later joined the women at the table in the beer-drinking. The three parties left the tavern for a time and later returned. It was then about 11:30 o'clock at night. They stayed about fifteen minutes; then Stella Probst left them, appellant agreeing to carry deceased home. After Mrs. Probst left, appellant purchased six bottles of beer and he and deceased drove away.

Some time thereafter and before daylight on the morning of June 27, police officers found deceased lying in the street two or three feet from the curb, with her chest crushed and paralyzed from the waist down by a severe back injury. She told the officers that appellant had run over her with a car. She was removed to the hospital, where she died the next day.

By dying declarations and written statements of the deceased, it is shown that appellant, after he and deceased left the beer tavern, endeavored to get her to engage in an act of sexual intercourse with him. Her refusal angered appellant, and he pushed her from the automobile. As she lay in the street, he drove the automobile across her body and then backed the car over the body, after which he drove away, leaving deceased lying in the street.

There was no material variance between the state's testimony and that of the appellant regarding the facts up to the time appellant and deceased left the tavern together after buying the six bottles of beer.

It is appellant's testimony that he and deceased were intoxicated; that, at the request of the deceased, he let her out of the automobile a short distance from her home; that he then drove to his home, arriving there about 12:20 o'clock, a. m. He denied that he had any part in the infliction of the injuries

to deceased and that he knew anything about the matter until he was awakened and notified thereof by the officers at his home.

It was the province of the jury to believe the statements and declarations of the deceased, and the facts are therefore deemed sufficient to support the conviction.

The state offered in evidence two written statements of the deceased.

The contents of one of these statements the appellant put in evidence by cross-examination of the witness to whom the statement was made. When the state subsequently offered the entire statement, no objection was urged thereto. It is apparent, therefore, that appellant, having placed in evidence the contents of the statement and not having objected to the introduction thereof before the jury, is not in position to complain of the testimony of the other witnesses testifying to the same facts as those contained in the written statement.

Among the witnesses testifying to the dying declarations of the deceased was the witness Oma Hill, with whom deceased lived. She appears to have been the last witness to whom deceased made a statement before her death a short time thereafter. It is only from the statement made to that witness by deceased that there is found a motive for the killing, which was to the effect that when she refused to engage in an act of sexual intercourse with appellant he became enraged and pushed her from the car and ran over her.

Appellant, by special requested charge and exception to the court's charge, complains because the trial court in his charge failed to instruct the jury as to the facts necessary to constitute a predicate for the receipt in evidence of a dying declaration and to require a finding by the jury as to the existence of such facts before considering the testimony concerning the declaration by the deceased.

The trial court was not under the burden of giving such a charge, because there was no fact issue for the jury to determine as a condition precedent to consideration of the dying declaration. The undisputed facts established the necessary predicate.

The state's case was not one of circumstantial evidence, and no necessity existed to instruct the jury upon circumstantial evidence.

There appears in the transcript twenty-two bills of exception, which may not be considered because they were not filed within the time required by law. The record shows that the time for filing bills of exception expired on July 18, 1949. The bills were filed July 19, 1949, one day too late.

There appears in the record an application by appellant, filed July 15, 1949, seeking to have the time for filing extended to July 20, 1949, but there is nothing in the record showing that the trial court acted upon the application or granted the request for extension of time.

Bills of exception not filed within the time and manner required by law (Art. 760, C. C. P.) cannot be considered upon appeal. The enforcement of this statute may be harsh, as in the instant case, where the punishment inflicted is twenty-five years in the penitentiary, nevertheless, we have no right to disregard the mandatory provisions of the statute.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

WOODLEY, Judge.

By supplemental transcript it is shown that the time for filing bills of exception was further extended by order of the trial court to July 20, 1949. The bills of exception will therefore be considered.

Bill No. 1 complains of the overruling of appellant's third motion for continuance because of the absence of the witnesses A. J. Lemmert and Mrs. A. E. Tuck.

It was alleged in the motion that from newspaper accounts appellant had learned that the alleged homicide was supposed to have been committed at or about the hours of one or two o'clock A. M. in the early morning of June 27, 1947; that appellant admitted having been with and in the company of the deceased until shortly after midnight.

By the witness Lemmert, appellant expected to prove that at or about one o'clock on said morning the witness saw the deceased get into an automobile with a woman and two men, and drive away. That when seen by him deceased was at or

near her home, and appeared to be in a highly intoxicated condition. That neither of the men was appellant.

The materiality of the testimony is apparent, because it supported appellant in his testimony that he had no connection with the death of the deceased and that she was alive and uninjured when he left her.

The witness Lemmert was not under process. Notwithstanding subpoenas had been issued, none had been served upon him. Upon the application for a subpoena for the witness made February 8, 1949, and six days before the case was called for trial and over nineteen months after the return of the indictment, his occupation was given as "Seaman 1/C" and his residence as "Bolan Hotel and Rooming House," Baytown, Harris County. The subpoena upon that application was not served, the return of the officer showing that the witness could not be found in Harris County.

In the affidavit attached to the motion for new trial, Lemmert gave no information as to his occupation, address, place of residence, or where he might be found for the service of process upon him. Witness did say in the affidavit, "I will keep you informed as to my address from time to time so that I will be available to testify if there is another trial of this case." The affidavit was subscribed and sworn to before "Mark M. Carter," Notary Public, Harris County, Texas, on April 13, 1949, which was fifteen days before the motion for new trial was acted upon.

Appellant's leading counsel, testifying upon the hearing of the motion for new trial, denied knowing Lemmert and having ever talked with him. He further testified that so far as he had been informed, his associate counsel in the case had not talked with Lemmert. He accounted for his information relative to the witness Lemmert by saying that it was furnished him by Henderson, a paid investigator employed by appellant.

Henderson did not testify upon the hearing of the motion for new trial.

Mark M. Carter, the notary public who took Lemmert's affidavit, is a licensed attorney and former president of the Baytown Bar Association. He was not called as a witness upon the hearing of the motion for new trial.

Walsh, investigator for the district attorney's office, testi-

fied that he had checked the register of the Bolan Hotel, where it was alleged that Lemmert resided from January 1, 1947, to the time of the giving of his testimony, and that Lemmert was not registered there during that period of time. Extensive investigation in Baytown failed to disclose anyone who knew or had heard of Lemmert. Walsh, however, did not contact Carter, the notary public before whom Lemmert made the affidavit.

Only two persons appear to have seen the witness Lemmert. These were Henderson, the investigator for appellant, and Carter, the aforesaid notary public, neither of whom appear to have been interrogated relative to their knowledge of or acquaintenance with Lemmert.

Upon the facts stated, the trial court reached the conclusion and found as a fact that no such person as A. J. Lemmert resided at the address given and that there was no reasonable probability that the attendance of the witness Lemmert could ever be secured.

While the trial court did not certify such as a finding of fact, the state argues with much emphasis that the facts here presented would warrant a conclusion that there was no such person as A. J. Lemmert.

Under the facts stated, it appears that Lemmert had no fixed place of residence. In his affidavit he states, as hereinbefore quoted, "I will keep you informed as to my address from time to time," which strongly indicates that he had no fixed residence and that his residence was changing from time to time. Moreover, Lemmert not being under process whereby his attendance might be enforced by the trial court, there is nothing in the record to suggest that he will again be within the jurisdiction of the trial court for service of process.

Under these facts, as well as the entire record, the conclusion is reached that the trial court was warranted in holding that there was no reasonable expectation of procuring the testimony of the witness Lemmert by a continuance of the case, and also in overruling the motion for new trial as to this alleged error.

While appellant in his brief presents only the absence of the witness Lemmert as ground for continuance, we will discuss the remaining witnesses whose absence is alleged in the motion for continuance.

The second witness alleged to be absent was Stella Probst, who is shown to have been in company with appellant and the deceased earlier in the evening.

Attached to the court's qualification is an affidavit of this witness to the effect that if present, she would not give testimony as claimed in the motion and the court so found.

No error is therefore shown in the overruling of the motion for new trial on account of the absence of this witness.

The third absent witness was Mrs. A. E. Tuck, the 71 year old mother of appellant, with whom he lived.

She was under process as a witness, and had been in regular attendance upon the court at all prior settings of the case.

Appellant attached to his motion the following certificate of Mrs. Tuck's physician:

"I have been treating Mrs. A. E. Tuck, of 506 W. Pearce, Baytown, Texas, for the past six months and from careful studies and examinations it is in my opinion she has a cerdiovascular renal disease. I do not believe she is in any physical condition to leave her bed. Any added emotional or physical strain may be fatal to her. It is possible she may be able to attend court in two or three months.

"Sincerely, (s) Percey Riley Fayle, M.D."

Attached to the motion for new trial which was filed April 22, 1949, was the following additional certificate of Mrs. Tuck's attending physician:

"TO WHOM IT MAY CONCERN:

"This is to certify I have been treating Mrs. A. E. Tuck for hypertensive cardio-vascular renal disease and it is my opinion that she has improved to the extent that she is now able to attend court. Sincerely,

"(s) PERCY R. FAYLE"

In her affidavit executed April 18, 1949, and attached to the motion for new trial, witness (Mrs. Tuck) stated that she had recovered to the point that she had that day visited her son (appellant) in jail.

Appellant alleged in his motion that Mrs. Tuck, if present,

would testify that he (appellant) arrived home at 12:30 A.M., and did not leave from that hour until daylight.

Attached to appellant's motion for new trial appears the affidavit of Mrs. Tuck in which the time of appellant's arrival home is fixed at 12:15 A.M., not later than 12:20. The affidavit states that the testimony is believed by the witness to be material for the reason that according to the newspapers, the deceased was found in the roadway in an injured condition at about 3:10 A.M., and that she (deceased) told the ambulance driver and others who found her that she had been lying in the road about two hours when discovered, all of which meant that deceased was injured, if such computations were correct, about 1:10 A.M.

The trial court's reason for overruling the motion on account of the absence of Mrs. Tuck is shown in his qualification to the bill of exception, which reads as follows:

"The court further found and finds as a fact that the condition of the health and illness of Mrs. A. E. Tuck is chronic, as shown by the certificate of the doctor attached to the third application for a continuance filed February 14, 1949, and that such fact was known to defendant for six months prior to February 14th, 1949, and for such length of time to have made it his duty to have taken her deposition, and that no diligence had been shown to obtain her testimony, and that it is not probable that she will ever be able to testify in person."

Basically, an accused is entitled to have witnesses in his behalf testify in person. It is only when the witnesses are beyond the jurisdiction of process or are of such an age or infirmity that it is exceedingly improbable that they will ever be able to testify in person that resort to deposition to secure and preserve the testimony of such a witness is required.

But even though the court was in error in his conclusion as to improbability that the witness would be able to testify in the future, we do not agree that the trial court abused his discretion in overruling the motion for continuance on account of the absence of Mrs. Tuck.

This was a subsequent application for continuance, and was properly overruled because under all the facts and circumstances, the trial court was warranted in concluding that a different result and one more favorable to appellant would not have been reached had this absent testimony been before the jury.

The rule with reference to the discretionary right of the trial court to determine if the absent testimony will probably produce a different result, is well established. See Davis v. State, 133 Tex. Cr. R. 215, 109 S. W. (2d) 756; Wiley v. State, 117 Tex. Cr. R. 449, 36 S.W. (2d) 495; Musselman v. State, 101 Tex. Cr. R. 96. 274 S.W. 628; Stacy v. State, 77 Tex. Cr. R. 52, 177 S.W. 114; Escobar v. State, 121 Tex. Cr. R. 303, 51 S.W. (2d) 346; Ferrell v. State, 118 Tex. Cr. R. 259, 38 S.W. (2d) 796.

In the Wiley case, supra, which was a case involving the overruling of a first application for a continuance, we said:

"We are of the opinion that the rule laid down in this regard by our predecessors should be adhered to by us, and that when an application for a continuance is overruled, and the fact of such refusal is made a part of the ground of the motion for new trial, that such new trial should not be granted unless this court, reviewing the case within its appellate jurisdiction, is satisfied that the action of the trial court in the overruling of such motion for a new trial amounted to an abuse of his discretion in determining in the first instance that, had the absent testimony been present on the trial, no different result would have been likely."

The option a judge has in deciding between the doing or not doing of a thing which cannot be demanded as an absolute right is judicial discretion. When the appellate court in reviewing such a decision of the trial court reaches the conclusion that the trial court should have acted otherwise, an abuse of discretion is shown. The conclusion each court reaches should be based upon reason and must not be arbitrary or capricious. Obviously, in the performance of these respective duties a great responsibility rests upon the courts.

While it is true that the state presented no eyewitness to the killing and its entire case depends upon the surrounding circumstances and the statements made by the deceased, these statements, coming as they did—first, as res gestae and then as dying declarations identifying appellant as her assailant, presented a strong case before the jury.

The time of appellant's arrival home is not controlling on the question of his guilt. Smith placed such time at approximately 12:20 A.M. Appellant, in his testimony, fixed the hour as 20 to 25 minutes after 12:00. He testified he knew it was before 12:30.

Mrs. Tuck, in her affidavit, fixed the time at about 12:15, not later than 12:20. Appellant, in his motion, alleged that she would testify that he arrived home at 12:20 A.M.

But none of such testimony or expected testimony necessarily conflicts with the state's testimony going to show guilt. According to the state's proof, appellant had time to commit the offense before driving to his home, though he may have arrived at 12:15 A.M.

The newspaper version as to the time of the infliction of the injuries does not appear to be borne out by the record.

W. A. Shafer testified that appellant and deceased came to his cafe the last time about 11:30 and stayed 15 or 20 minutes before they left. He fixed the time of their leaving at a few minutes before 12:30 and also at 11:55 P.M.

Mrs. Jane Davis testified that she was employed at the cafe, and that it was near 12:00 when she last served appellant and deceased. She fixed the time at from 2 to 20 minutes before 12:00, when they asked for beer to go. She testified that she knew it was before 12:00 because she went off duty at that hour.

Appellant, in his testimony, fixed the time of leaving the cafe at 5 to 8 minutes past 12:00, and that he estimated it took him not more than 15 minutes to drive home.

And in the motion for continuance relating to another absent witness appellant admitted being in the company of the deceased until about 12:30 and alleged that he left deceased between the hours of 12:00 midnight and 1:00 o'clock A.M. on June 27th.

Harry Combs testified that he was awakened by groans and calls for help, but went back to sleep. That he was again awakened by similar calls, and then called the police. He estimated that it was 10 minutes after his call before the ambulance arrived.

W. W. Eason testified that he received the call about 3:24 A.M.

The deceased was admitted to the hospital at 4:00 A.M. but was examined there between 4:00 and 4:30 according to the recollection of Dr. Holsomback.

The statement of the deceased regarding the time she lay in the street was that she "lay there for God only knows how long," and in her written declarations offered by appellant, deceased appears to have estimated the time she was pushed from the car at about 12:30.

No witness attempted to definitely fix the time of the infliction of the injuries. It could well have been shortly after midnight. From the interrogation of the doctor, it appears to have been the state's theory at the trial that the deceased had lain in the street from approximately 12:00 or 12:30 until 3:30 without medical attention.

If the state had admitted on the trial, in answer to appellant's motion for continuance, that it was true that appellant arrived home at the time suggested by appellant and remained there until daybreak, such facts would not constitute an alibi and such admission would not destroy the state's case as testified to by the witnesses, and shown by the dying declarations of the deceased.

In the light of such facts, the trial court was authorized to conclude that the testimony of Mrs. Tuck would not have resulted in a verdict more favorable to appellant, had it been before the jury.

We are unable to reach the conclusion that the trial court abused his discretion in overruling the motion for a continuance.

Bill of Exceptions No. 5 relates to the state's hypothetical question propounded to Dr. Holsomback in which the doctor was asked to assume that the deceased had been run over by an automobile, and had received the injuries the witness had described, and that deceased had lain in the street from approximately 12:00 or 12:30 A.M. until 3:30 A.M. without any medical attention. Upon such assumption, the doctor was asked whether her condition would have been affected or aggravated thereby.

Appellant sought to have the trial court certify that no testimony was offered prior or subsequent to the propounding of the question that the deceased lay in the street "from approximately 12:00 or 12:30 A.M. until 3:30 A.M. without medical aid," and that no testimony was offered that deceased did not have medical attention.

The objection was that no predicate had been laid for the hypothetical question.

The trial court qualified the bill and certified that he could not and did not so certify. On the contrary, the qualification shows that subsequent to the question being propounded, testimony was offered that warranted the question. As qualified, the bill fails to show reversible error.

Many of the questions raised by other bills of exception have been considered and discussed on original submission, and have been properly disposed of.

All other bills have been considered, and as qualified show no reversible error.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.