**J. L. LAPP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49436.**

Court of Criminal Appeals of Texas.

Feb. 12, 1975.

Seferino C. Dominguez, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, James Paul Barklow, Jr., and John Howard Stauffer, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of unlawful delivery of a dangerous drug; to-wit, barbiturate. Punishment was assessed at five years.

The record reflects that in November, 1972, appellant was a Doctor of Osteopathic Medicine, with an office in Garland. Dolores Simmons was his employee, serving as receptionist in his office.

Dennis Vickery, an undercover agent with the Department of Public Safety, testified that he became acquainted with appellant on November 10, 1972. On November 24, 1972, Vickery had a telephone conversation with appellant concerning "reds" and "blacks,"[1] which resulted in Vickery making an appointment with appellant in the latter's office to buy a large amount of "reds" and "blacks" for $5,000.-00. On November 25th, Vickery went to appellant's office, and was ushered into the inner office by Dolores Simmons. Appellant and Vickery, in Simmons' presence, agreed that appellant would sell to Vickery 9,800 "reds" and 6,100 "blacks" for $5,000.-00. Vickery tendered that sum to appellant, who told him that the transaction should not be completed in the office and instructed Vickery to go with Simmons, who would deliver him the capsules, and receive the money. When Vickery stated that $5,000.00 was a large sum to be delivered to someone else, appellant stated that he trusted her and that Vickery should not be concerned about that.

Vickery followed Simmons to a lumberyard where her car was parked. They got in her car, and he handed her $5,000.00, and she delivered to him a box which contained 6,100 black capsules in 16 glass bottles and 9,800 red capsules in 26 plastic bottles. In their conversation about the transaction, the following remarks, among others, were testified to by Vickery:

"Q (By Mr. Barklow): Would you tell us, please, what that conversation was?

"A I handed her the money, and asked her if she wanted to count it, and she said no, that she didn't need to count it. If it wasn't all there, she would call the Garland police department and tell them I stole a bunch of drugs from Dr. Lapp's office.

"Q All right. And did she make some other statements regarding the money?

"A Yes, sir. I said, 'This is a lot of money and I am going to make sure that it goes to the right place.' She said, 'Don't worry. The doctor will get his money. He always does.'"

[1] "Reds" or "Redbirds" are shown by the evidence to be "downers" or depressants. "Blacks" or "Black Mollies" are "uppers" or central nervous stimulants. The evidence shows both to be dangerous drugs as same were defined in Article 726d, Vernon's Ann. P.C., at the time of this offense.

George Taft, a duly qualified chemist with the Department of Public Safety, testified that, on chemical analysis, the "blacks" or black capsules contained amphetamines and that the "reds" or red capsules contained a barbituric acid derivative, same being a barbiturate.

The appellant did not testify, and offered no witnesses.

In his third ground, appellant contends that the court erred in permitting Vickery to testify concerning the conversation he had with Dolores Simmons out of the presence of appellant.

In his first ground, appellant alleges error in the court's failure, over objection, to give a limiting instruction to the jury regarding the hearsay testimony of the conversation between Vickery and Simmons.

■ Vickery's testimony established the existence of a conspiracy between appellant and Dolores Simmons in connection with the commission of this offense, and that the conversation between Dolores and Vickery occurred during the furtherance of the conspiracy. As stated in Helms v. State, Tex.Cr.App., 493 S.W.2d 227, 230, "Each statement or act of a co-conspirator up until the time the object of the conspiracy is completed is admissible . . . ." Citing authorities.

See, also, Drakes v. State, Tex.Cr. App., 505 S.W.2d 892; Phelps v. State, Tex.Cr.App., 462 S.W.2d 310; Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146; Sapet v. State, 159 Tex.Cr.R. 620, 266 S. W.2d 154.

■ As to the complaint that no limiting instructions were given to the jury, the complained of statements were a part of the res gestae of the offense, and no limiting instructions were necessary. 31 Tex. Jur.2d, P. 725, Instructions, § 149; Arivette v. State, Tex.Cr.App., 513 S.W.2d 857, 864.

The first and third grounds of error are overruled.

In his second ground, appellant avers that the court erred in failing to include in the charge to the jury a definition of the terms barbiturate, practitioner, patient, and amphetamines.

■ No mention of the terms practitioner, patient, and amphetamines was made in the court's charge. No definition of those terms was necessary.

The court charged that "[o]ur statute provides that it shall be unlawful for any person to deliver any dangerous drug and that any person violating this statute shall be punished. It also provides that barbiturate is a dangerous drug."

The charge then provided that if the jury found beyond a reasonable doubt that appellant did deliver to Dennis Vickery a dangerous drug, to-wit: barbiturate, on November 25, 1972, as charged, it should find him guilty, and unless it so found beyond a reasonable doubt, or if it had a reasonable doubt thereof, it should find him not guilty.

No definition of barbiturate was included. Appellant objected in writing to the failure to define said term, which objection was overruled.

This case was tried and the conviction obtained under the provisions of Article 726d, V.A.P.C., as that article read at the time of the commission of the offense in November, 1972. Article 726d, Dangerous Drugs, purported, in Section 1 thereof, to regulate and control "the handling, sale and distribution of 'dangerous drugs' as defined in this Act." Section 2(a)(1) provided:

"Sec. 2. For the purposes of this Act:

"(a) The term 'dangerous drug' means any drug or device unsafe for self-medication, except preparations of drugs defined in Subdivisions (a)(6), (a)(7), (a)(9), and (a)(10) hereof, designed for the purpose of feeding or treating animals (other than man) or

poultry, and so labeled, and includes the following:

"(1) Any barbiturate or its compounds, mixtures or preparations. Barbiturate includes barbituric acide derivatives or any salt of a derivative of barbituric acid."

Other than as above shown, the term "barbiturate" was not defined in Article 726d.

Chemist George Taft testified that State's Exhibits 16 through 32 contained a barbiturate. The evidence established that the barbiturates in said exhibits were delivered to Agent Vickery by Dolores Simmons under the circumstances heretofore detailed. The testimony of the chemist Taft was uncontroverted, and the evidence did not raise any of the defenses provided in Article 726d.

■ In view of the language in the applicable statute declaring a barbiturate to be a dangerous drug, which statute does not define the term barbiturate, but merely states by the use of its own term that barbiturate includes derivatives and salts of derivatives of barbituric acid, the court did not err in failing to include a definition of barbiturate in its charge.

Appellant strongly relies on this Court's holding in Venzor v. State, 162 Tex.Cr.R. 175, 283 S.W.2d 397, decided in 1955, in which the judgment was reversed because of the omission of the definition of barbiturate. As stated in the opinion, the prosecution in Venzor was under Article 726c, V.A.P.C., then in existence, but repealed prior to the commission of the instant offense. This article was not applicable generally to dangerous drugs, but regulated and controlled "the handling, sale and distribution of barbiturates, as defined in this Act." It specifically defined the term "barbiturate" as meaning "the salts and derivatives of barbituric acid, also known as malonyl urea, having hypnotic or somnifacient actions, and compounds, preparations and mixtures thereof." At that time, Arti-

cle 726b, V.A.P.C., since repealed, provided that an amphetamine was "commonly called" a barbiturate. See opinion in *Venzor,* supra; also see 3 Branch's Ann.Pen. Code, Sec. 28, p. 379. Since amphetamines were also delivered by the defendant in Venzor, this Court recognized that an amphetamine was not a derivative of barbituric acid, and reasoned that without the benefit of the statutory definition of barbiturate the jury could convict the defendant for delivery of amphetamines "though he was not charged with such in the complaint and information."

As stated above, appellant in the instant case was prosecuted under the Dangerous Drugs Act, Article 726d, enacted subsequent to the decision of *Venzor,* supra. This Act specifically named barbiturates and the derivatives thereof as a dangerous drug, without further definition. *Venzor,* supra, is not applicable.

The second ground of error is overruled.

In his fourth ground, appellant contends that the court erred in denying his First Motion for a Continuance.

On the day the case was called for trial, appellant presented to the court his sworn motion for a continuance, based upon the absence of a material witness. A hearing was had on said motion, after which it was denied. The case proceeded to trial.

■ Thereafter, in due time, appellant filed his motion for a new trial. However, no complaint was made therein of the alleged error of the court in denying the motion for continuance. There was no affidavit of the missing witness, and no showing made in connection with the motion for a new trial that the witness would actually testify to facts favorable to appellant.

In Fields v. State, 495 S.W.2d 926, this Court said:

"[1] It is not necessary to pass upon the inadequacy of the motion for continuance under Article 29.07, Vernon's Ann.C.C.P., because there is no motion

for new trial alleging the failure of the court to grant a continuance. A motion for new trial based upon the overruling of the motion for continuance because of the absence of a witness should have an affidavit of the missing witness or a showing under oath from some source that the witness would actually testify to the facts set out in the motion for new trial. See 1 Branch's Ann.P.C.2d, Section 357. Rangel v. State, Tex.Cr.App., 463 S.W.2d 203. See Harris v. State, Tex.Cr.App., 450 S.W.2d 629; Thames v. State, Tex.Cr.App., 453 S.W.2d 495."

See, also, Article 29.06, Vernon's Ann.C.C.P.; Allen v. State, Tex.Cr.App., 505 S.W.2d 923; Spencer v. State, Tex.Cr.App., 503 S.W.2d 246; McCloud v. State, Tex.Cr.App., 494 S.W.2d 888; Haggerty v. State, Tex.Cr.App., 491 S.W.2d 916.

The fourth ground of error is overruled.

In the fifth ground, appellant complains of the following argument of the prosecuting attorney at the guilt stage when, in referring to the State's witness Vickery, the undercover agent, he stated:

"I tell you that man's testimony came from that witness stand, and you can be the judges of it. You watched the man. You know that this isn't the only case he has ever worked; that he is out there working for you right now. He has seen many people and been involved in much investigation, both before and since this case. This is just one case that he got summoned on Monday when we were getting ready to go to trial up here, and remember as best he could, and I thought he did a pretty good job. It sounded honest to me, but that's for you to judge.

"MR. HENDLEY: To which we will object at (sic) to the approval of his honesty.

"THE COURT: Overruled."

█ The record reflects that defense counsel, in his talk to the jury, repeatedly made references to the untrustworthiness of Vickery, and attacked undercover agents generally. The remarks of the prosecuting attorney were invited. No error is shown. Chapman v. State, Tex.Cr.App., 503 S.W. 237; Sennette v. State, Tex.Cr.App., 481 S.W.2d 827.

█ In his sixth ground, appellant claims error in the following statement of the State in its argument to the jury at the guilt stage: "If we can stop the source of this—How do these young people get this stuff?"

Appellant's objection was sustained, and the jury were instructed to disregard. Motion for mistrial was overruled. No reversible error is shown. Hunt v. State, Tex.Cr.App., 511 S.W.2d 954.

Appellant contends, in his seventh ground, that the court erred in failing to give a charge on accomplice witness regarding the res gestae statements of the accomplice Dolores Simmons. She did not testify as a witness, and statements introduced in evidence through the testimony of State's witness Vickery were res gestae of the offense. No charge on accomplice witness was required.

In his eighth ground, appellant complains of prejudicial error in the failure of the court to grant a mistrial when the prosecutor "arraigned the appellant in the presence of the jury."

█ Outside the presence of the jury, the defendant was arraigned in accordance with Articles 26.01 et seq., V.A.C.C.P. Then, when the prosecutor was reading the indictment to the jury, and as he reached the name "J. L. Lapp" he inquired of appellant: "Is that your name?" Appellant answered: "Yes, sir." Appellant's counsel then objected "to any arraignment in the presence of the jury." The objection was sustained, and the jury were instructed to disregard the incident. Motion for mistrial was overruled.

It was error for the State to make the inquiry of appellant in the presence of the

jury. However, in view of the instruction of the court, no reversible error is shown. Minafee v. State, Tex.Cr.App., 482 S.W.2d 273; Boykin v. State, Tex.Cr.App., 487 S. W.2d 128.

There being no reversible error, the judgment is affirmed.

Opinion approved by the Court.