Ernesto Ortega VARELA, Appellant,

v.

The STATE of Texas, Appellee.

No. 52959.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 8, 1978.

**187**

F. Terry Callahan, San Antonio, for appellant.

Ted Butler, Dist. Atty., E. Dickinson Ryman, Sid W. Conwan, Jr., and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, for the State.

## OPINION

ONION, Presiding Judge.

With the exception of the two footnotes contained therein which this writer has inserted, the following opinion was originally prepared by the late Judge Howard P. Green, a Commissioner of this court. In writing for the majority, I adopt Judge Green's opinion as that of the court.

"This is an appeal from a conviction by a jury for the offense of sale of heroin. Punishment was assessed by the court at twelve (12) years.

The sufficiency of the evidence is not challenged.

The State's evidence reflects that on the afternoon of June 15, 1972, appellant sold heroin to undercover Officer Albert Chevera of the San Antonio Police Department. On the date of the transaction Officer Chevera drove with his informant Jimmy Levine a/k/a Jimmy Martinez to the corner of Somerset and Stonewall in San Antonio. Officer Chevera and Levine parked the car and walked over and initiated a conversation with appellant. During the conversation, appellant asked Officer Chevera if he wanted to "score" some heroin. Chevera said yes. The three men got into Chevera's automobile and appellant directed Chevera to drive to the corner of Guadalupe and Cibolo. While en route, Officer Chevera gave appellant $30.00 as payment for the heroin. Appellant sighted "El Chueco" at the corner of Guadalupe and Cibolo and motioned him to the car. Appellant and "El Chueco" had a conversation which was followed by instructions from "El Chueco" to drive all four of them to the 200 block of Elvira. Upon arrival at Elvira, "El Chueco" exited the car. Shortly thereafter, he returned, handed something to appellant, and left. Appellant then handed a balloon containing heroin to Officer Chevera. Ap-

pellant testified at trial that the crime was initiated by Officer Chevera and Jimmy Levine and that appellant was not predisposed to commit the crime but was induced to do so by Levine and Officer Chevera. Levine was not present to testify at the trial, and the record discloses that the prosecution did not know where he was or how to contact him.

In grounds of error one and four appellant contends the State was required to produce the absent witness Jimmy Levine at trial and the State's failure to do so violated appellant's right to compulsory process as guaranteed by the Sixth Amendment.

■ It is well established that the identity of an informer must be disclosed when he participated in the offense, or was present at the time of the occurrence of the crime, or would be a material witness as to whether or not the accused knowingly committed the offense. *James v. State,* 493 S.W.2d 201 (Tex.Cr.App.1973); *Carmouche v. State,* 540 S.W.2d 701 (Tex.Cr.App.1976); see also *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Appellant was aware of the identify of Levine as the informer prior to the instant trial. The record reflects the State fulfilled its obligation by fully disclosing any knowledge it had of the whereabouts of Levine.

■ The Sixth Amendment does not require that the State or government be successful in trying to subpoena witnesses. All that is required is that process issue and due diligence be exercised in a good faith attempt to secure service of process. *Sigard v. State,* 537 S.W.2d 736 (Tex.Cr.App. 1976); *White. v. State,* 517 S.W.2d 543 (Tex. Cr.App.1974); *United States v. Bolden,* 461 F.2d 998 (8th Cir. 1972); *Maguire v. United States,* 396 F.2d 327 (9th Cir. 1968). Appellant does not allege nor does the record reflect that the State did not make a diligent good faith attempt to secure service of process on the absent witness. As in *Si-*

*gard,* supra, the record reflects that the State and appellant were unsuccessful in their efforts to locate Levine and secure his presence at the trial.

■ Therefore, grounds of error one and four are predicated solely upon the contention that the State played a material role in securing the witness' disappearance. The basis of appellant's contention stems from the testimony of Preston Slocum, elicited during the hearing on appellant's motion for new trial. Slocum, who was not present at the trial, testified at the hearing on the motion as follows:

"Q (Appellant's Counsel): Did you ever have occasion to talk to Mr. Levine about the advisability of him staying in San Antonio, Bexar County, Texas?

"A (Lt. Slocum): Yes, sir.

"Q What were the facts surrounding that conversation?

"A He said—we told him the raid was going to go down and he said he was going to leave town but didn't have any money. I told him I thought that was a good idea. I still think it was a good idea. He said he didn't have any money. I gave Detective Doyal $75.00 for eating money.

"Q You know when you paid Officer Doyal that $75.00 that that was going to be given to Mr. Levine; he was going to use that to leave town?

"A I sent it out to the man. He said he was leaving town. Now, whether he was going to or not, I don't know.

"Q But, you knew it was to be his advantage to leave town?

"A If I was in his shoes, I would have left town I guarantee you.

"Q And you advised him of the big bust before it went down, right?

"A Yes, he was advised."

*Sigard v. State,* supra, is controlling.[1] Sigard also contended he was denied compul-

---

1. The dissenters would construe this testimony in the context of the analysis used in the dissenting opinion in *Sigard v. State,* 537 S.W.2d 736 (Tex.Cr.App.1976). Insofar as the amount

paid Levine is concerned, the dissenting opinion in *Sigard* misses the mark. The amount of money given to Levine was not there and is not here of any real significance except as some

sory process of witnesses based upon the same act complained of by appellant.

In *Sigard* we stated:

"Further, we cannot reach the conclusion that Lt. Slocum had the $75.00 delivered to Levine two and one-half years prior to the actual trial of the case in order to conceal evidence and deprive the appellant of the right of compulsory process of witnesses. The appellant had not even been arrested, and no indictment had ever been returned at the time. The record reflects that Slocum's reasons were dictated by his concern for Levine's personal safety and security which would make it a 'good idea' for Levine to leave town prior to the narcotics roundup. As stated in the concurring opinion on the State's motion for rehearing in *White* (517 S.W.2d 543):

" ' . . . It is certainly common knowledge that lives of informers in narcotic cases are in constant danger. The conversation appears to have taken place shortly after Leveine's (sic) activities as an informer had been completed. Upon Leveine's (sic) suggestion that he "needed some money to eat" Slocum sent him $75.00 by one of his officers. The amount involved was not sufficient to allow him to travel any great distance or to keep him in food for long.'

Slocum's action cannot be seen as a calculated attempt to deprive this appellant of compulsory process because of Levine's unavailability two and one-half years later. Indeed, Levine's appearance as a witness at future trials would seem to be more assured and likely if he sought safety out of town at the time than if he remained in town at the mercy of alleged narcotics pushers who might be released on bond.

"Further, for the same reasons, we cannot conclude that the appellant was deprived of due process or that the court erred in overruling the motion for the State to produce Levine, his motions to abate or dismiss the prosecution, the motion to suppress evidence or the third motion for continuance based on the absence of Levine, as were the earlier motions. We are here confronted with a case that long pended on the docket of the court while both sides made a diligent effort to locate Levine without success and there was no showing that if the case was continued there would be any chance of locating Levine, and further, neither the State nor the appellant knew for sure what Levine's testimony would be. Under the circumstances, the trial court cannot be faulted for proceeding with the trial almost three years after the alleged offense and over two years after return of the last indictment."

In the instant case appellant also had not been arrested nor had an indictment been returned at the time Levine received the $75.00. Appellant also did not go to trial until almost three years after the payment had been made.

Further, it is highly unlikely that the mere absence of money would dissuade an informer whose life was in jeopardy from leaving town. Lt. Slocum's testimony reflects that Levine had aided the police in making over one hundred cases against narcotic dealers. Levine would justifiably fear reprisals from numerous individuals. It is obvious that Levine's leaving town was precipitated by his knowledge of the police's intention to arrest the very individuals against whom Levine had helped make cases and not by the State's token $75.00 payment.[2]

indication that Levine's departure was not likely motivated by such a small sum.

2. The crux of the dissenting opinion is the characterization of Slocum's action as improper State involvement which deprived appellant of his right to compulsory process. The dissent admits the record cannot support an assertion that any agent of the State instructed Levine to

leave town in order to conceal evidence or deprive appellant of the right to compulsory process. Upon only a showing that Slocum *knew* Levine could be a potential witness at some uncertain future date, the dissent would, in effect, impute an improper motive to the State. Such a presumption of illegal State action goes too far on too little evidence. While the dissent may colorfully imagine that Slocum

Appellant's grounds of error one and four are overruled.

Further, for the same reasons, the trial court did not err in overruling appellant's motion to suppress the evidence of the sale of the heroin by appellant, which motion was based on the State's having "made unavailable a material witness to the alleged sale . . .."

Appellant's ground of error number two is overruled.

Appellant contends in his third ground the trial court erred in denying his first motion for continuance.

On the day the case was called for trial, appellant presented to the court his sworn motion for a continuance based upon the absence of witnesses Slocum and Levine. A hearing was had on the motion after which it was denied.

■ Appellant's motion for continuance reflects that appellant had engaged the services of a private investigator as of July 18, 1975, to locate witnesses Levine and Slocum. Appellant, however, did not cause citation to be issued for the missing witnesses until September 2, 1975, the day before the trial on the merits began. Additionally, the motion for continuance was not filed until the day of the trial. The diligence required to support a motion for continuance has not been shown, and error in the overruling of the motion is not presented. *Gonzales v. State,* 505 S.W.2d 819 (Tex. Cr.App.1974); *Booth v. State,* 499 S.W.2d 129 (Tex.Cr.App.1973); *Kelly v. State,* 471 S.W.2d 65 (Tex.Cr.App.1971).

During the hearing on the motion for continuance, appellant's investigator testified to the following concerning locating Jimmy Levine.

"actively participated in facilitating and encouraging Levine's departure," the record speaks plainer: Slocum gave Levine $75.00 for "eating money" and agreed with Levine's own prior assessment that he should leave town for awhile.

As for the dissent's claim that failure to obtain Levine's future address was an improper omission by the State, we still have no evidence that such inaction was motivated by the desire

"BY MR. RYMAN:

"Q Since July 18th, 1975, what efforts have you made as far as trying to locate this person by the name of Jimmy Levine or Jimmy Martinez or whatever his true name is?

"A (Mr. Luther, appellant's investigator): All right, I checked again with the Bexar County Sheriff's Department when I was appointed on this case, and I checked again with the domestic relations section and also the hot check section. I checked with two other investigators that I know that have been appointed on other cases that were stemming from Mr. Levine. And we talked and exchanged ideas to see possibly what idea we could come up with to find him.

"Q In checking with his sister, did she have an address in the State of Minnesota for this person?

"A No, sir. She got a letter from him postmarked from Minnesota and didn't elaborate on the contents of the letter. She said to me that she thought he had been there for two or three years.

"Q Two or three years?

"A And I'd like to make a correction, that it wasn't Minnesota; it was Michigan.

"Q Michigan?

"A Yes, sir.

"Q All right, in trying to locate Jimmy Martinez or Jimmy Levine, approximately what amount of time did you use or expend to try to locate him in this case?

"A In this case approximately two hours; maybe three.

to suppress evidence or deprive appellant of a witness. Moreover, the Sixth Amendment does not require the State to insure that a defendant's attempts to secure witnesses will succeed. All that is required is that process issue and due diligence be exercised in a good faith attempt to secure service of process. *United States v. Bolden,* 461 F.2d 998 (8th Cir. 1972); *Maguire v. United States,* 396 F.2d 327 (9th Cir. 1968).

"Q   All right.  Now, if the Court were to give you the opportunity to further try to find this witness, what avenues would you take in trying to locate him?

"A   I would have to go back over and contact the same people that I've previously contacted and the addresses that I've previously contacted that we have on him that I've previously checked before.

"Q   From your experience in the past in trying to locate this witness, do you think that these efforts would prove fruitful?

"A   No, sir."

From appellant's investigator's testimony it appears that the witness Levine was beyond the jurisdiction of the court in a distant state.  His address, if any, was unknown.  There is nothing in the record to indicate that the witness' attendance could be secured by a continuance.

■   If the evidence does not indicate a probability that the witness can be secured by a postponement, or if it appears that a continuance due to the absence of the witness would delay the trial indefinitely, the motion may be properly denied.  *Salinas v. State,* 542 S.W.2d 864 (Tex.Cr.App.1976); *Zamora v. State,* 158 Tex.Cr.R. 85, 253 S.W.2d 277 (1952); *Tuck v. State,* 155 Tex. Cr.R. 113, 231 S.W.2d 436 (1950).

■   Moreover, it is not necessary to pass upon the inadequacy of a motion for continuance where there is no motion for new trial alleging the failure of the court to grant the continuance and no affidavit of the missing witness or a showing under oath from some source that the witness would actually testify to the facts set out in the motion for new trial.  *Lapp v. State,* 519 S.W.2d 443 (Tex.Cr.App.1975); *Fields v. State,* 495 S.W.2d 926 (Tex.Cr.App.1973); see also Article 29.06, V.A.C.C.P.

■   Appellant's motion for new trial does not complain of the trial court's alleged error in denying the motion for continuance.  There is no affidavit of the missing witness Levine.  The only testimony elicited during the motion hearing concerning what facts the absent witness Levine would testify to is as follows:

"BY MR. CALLAHAN (counsel for appellant):

"Q   Would you state your name for the record?

"A   (Appellant): Ernest Ortega Varela.

"Q   Ernest, I have one question for you: You have testified earlier in the trial.  What I would like you to tell the Court and for the record, Mr. Levine was present at the time while you were with Officer Chevera?

"A   Yes, sir, he was.

"Q   Okay.  Would Mr. Levine's testimony support your testimony in the trial?

"A   He was there and he might say something that I don't know what he's going to say, but he was there and the transaction was through him; so he was there.

"Q   And he's the only witness that you have that's available to you to prove your side of the story?

"A   Yes, sir."

We hold that such testimony is ambiguous at best and is insufficient to show that Levine would actually testify to facts favorable to appellant.

The third ground of error is overruled.

In ground of error number five appellant complains that the following rulings of the trial court in sustaining the objections to the defense counsel's questions resulted in a comment on the weight of the evidence and denied appellant a fair trial.

"Q   (Defense Counsel): What was the $75.00 for?

"A   (Officer Doyal): I do not know.

"Q   Could it have been to pay Mr. Levine to leave town?

"MR. RYMAN (Prosecutor): Your Honor, I object.

"THE COURT: Sustained.

\*      \*      \*      \*      \*      \*

"Q   (Defense Counsel): And was Lieutenant Slocum aware of the working

relationship between Mr. Levine and Officer Chevera?

"THE COURT: Do you have an objection?

"MR. RYMAN (Prosecutor): It calls for a conclusion on the part of this witness.

"THE COURT: Sustained.

\*   \*   \*   \*   \*   \*

"Q   (Defense Counsel): Have you undergone any rehabilitation or any type of a cure to help you to get over your addiction?

"MR. RYMAN (Prosecutor): Your Honor, we object to this as being irrelevant and immaterial in this case.

"THE COURT: Sustained."

The rulings first and third, supra, complained of were simply rulings on objections interposed by counsel. Appellant's counsel interposed no objection to the alleged comment of the court when it requested whether the State had an objection, and, therefore, nothing is presented for review. *Calverley v. State,* 511 S.W.2d 60 (Tex.Cr.App.1974); *Jenkins v. State,* 488 S.W.2d 130 (Tex.Cr.App.1972).

Further, to constitute reversible error, the comment of the court must be reasonably calculated to prejudice the defendant's rights. *Ables v. State,* 519 S.W.2d 464 (Tex.Cr.App.1975); *Hernandez v. State,* 507 S.W.2d 209 (Tex.Cr.App.1974). Clearly, since the rulings did not amount to a comment on the weight of the evidence, they could not have been reasonably calculated to prejudice appellant's rights.

Appellant's ground of error five is overruled.

In ground of error number six appellant contends the trial court erred in failing to instruct the jury that remarks made by the prosecutor during jury argument were not to be considered as evidence. Appellant complains that such failure was error in light of the fact that such an instruction was given regarding appellant's counsel's jury argument.

Appellant's contention is without merit. The record reflects that the court's admonishment was directed to the jury argument of both the prosecutor and defense counsel.

"THE COURT: . . . And after you hear summations, the jury will retire to deliberate. And you will take this charge with you to read it at your leisure. I will admonish you and tell the jury at this time that whatever the State attorneys say or the Defense attorney tells the jury now, that they are not testifying under oath. And so their statements are not to be considered as evidence. They are summing up as they recall the testimony, and you are not to consider their summations as evidence in the case. However, counsel for both sides can make reasonable deductions from the evidence as they heard it. But you will decide the issue in this case of guilt or innocence from what you remember of the case."

Appellant's sixth ground of error is overruled.

Appellant in ground seven contends the court erred in denying appellant's counsel a reasonable second jury argument under Article 36.08, V.A.C.C.P.

Article 36.08, supra, provides:

"The court shall never restrict the argument in felony cases to a number of addresses less than two on each side."

We have held that where the accused has only one attorney it is within the court's discretion whether defense counsel may make more than one argument to the jury. *Pryor v. State,* 449 S.W.2d 482 (Tex.Cr.App. 1969). Article 36.08, supra, does not give the accused the right to rebut the closing argument of the State.

No abuse of discretion has been shown; ground of error number seven is overruled.

Appellant finally complains the trial court erred in failing to grant a new trial due to newly discovered evidence. The evidence which appellant says "is so material that it would have changed the results of the trial" was the following testimony of Officer Slocum given at the hearing on the motion for new trial:

"Q (Mr. Callahan): I have a couple of more questions, Lieutenant Slocum. One is on the other side that the State just asked you. You do not have any knowledge that Mr. Levine's testimony would probably be contradictory to what Mr. Chevera has stated, isn't that correct?

"A (Lt. Slocum): I really don't know what Mr. Levine would testify to, you know.

"Q You don't have knowledge of the fact that Mr. Levine would possibly testify that Officer Chevera lied in his report?

"A It's a possibility that he could."

In *Myers v. State,* 527 S.W.2d 307 (Tex. Cr.App.1975), we stated:

"In order for a new trial to be granted on the basis of newly-discovered evidence, it must be shown that such evidence was in fact newly-discovered, that it was material, that the failure to discover the evidence sooner was not due to lack of diligence on the part of the appellant, that the new evidence was probably true, and that such evidence would probably produce a different result at another trial. . . ."

See also *Williams v. State,* 504 S.W.2d 477 (Tex.Cr.App.1974). Article 40.03(6), V.A.C. C.P.

We hold that such testimony does not amount to newly discovered evidence that would probably produce a different result at another trial. Slocum's testimony merely reflects his recognition of the fact that since he had no knowledge of what Levine's testimony would be, it was possible that it could impeach Officer Chevera's testimony.

Appellant's eighth ground of error is overruled.

The judgment is affirmed."

ROBERTS, Judge, dissenting.

The following is an opinion that constituted the position of a majority of the members of this Court when it was comprised of five judges. That majority, in light of the increased size of the Court, now comprises a minority. The current majority opinion blindly sanctions improper state action and reveals a distressing insensitivity to due process notions. Judges should not forget what they know as men, but clearly this is what the majority have done. I dissent:

"This is an appeal from a conviction under our former Penal Code for the sale of a narcotic drug.[1] The trial judge assessed the appellant's punishment at twelve years' confinement in the Texas Department of Corrections.[2]

The appellant's contentions are numerous. Due to our disposition of this case, however, we need only consider appellant's contention that he was denied his right to compulsory process of witnesses by the State. We reverse.

The testimony adduced at trial reveals that on June 15, 1972, Officer Chevera of the San Antonio Police Department met with an informant, Jimmy Levine a/k/a Jimmy Martinez. They drove to the corner of Somerset and Stonewall in San Antonio where they parked their car. Chevera and Levine encountered the appellant on the corner and initiated a conversation with him. During the conversation, the appellant asked Chevera if he wanted to "score" some heroin. Chevera responded that he did.

Pursuant to the appellant's instructions, Chevera, Levine and the appellant then drove to the corner of Guadalupe and Cibolo. While en route, Chevera gave the appellant $30 for the heroin. When they arrived at the corner, the appellant sighted a person identified as "El Chueco." The appellant motioned or called for "El Chueco" to come to the car, which he did.

The appellant and "El Chueco" then had a discussion. After their discussion, "El

1. Article 725b, Section 2(a), Vernon's Ann.P.C.

2. Trial was before a jury, but the appellant declined to exercise his option to have the jury assess punishment. Article 37.07(2)(b), Vernon's Ann.C.C.P.

Chueco" entered the car and the four men, under the direction of "El Chueco," proceeded to the 200 block of Elvira.

When the four men arrived at the 200 block of Elvira, "El Chueco" left the car. Chevera, Levine and the appellant remained in the car. "El Chueco" subsequently returned to the car, handed an object to the appellant, and then left. The appellant then handed a balloon to Chevera. The balloon contained a substance later identified as heroin.

The appellant testified at trial that Chevera and Levine had initiated the offense, that he was not predisposed to deliver heroin to Chevera, but that he was induced to deliver heroin to Chevera by Chevera and Levine.

Prior to trial, the appellant filed a motion for a continuance. Articles 29.03, 29.06, Vernon's Ann.C.C.P. As grounds for the motion, the appellant alleged the absence of two material witnesses, Jimmy Levine a/k/a Jimmy Martinez, and Officer Slocum of the San Antonio Police Department. The motion stated that despite the efforts of a court-appointed private investigator, the appellant had been unable to locate either of the two witnesses; that the witnesses had been subpoenaed at their last known addresses; that the testimony of Levine would substantiate and corroborate the appellant's anticipated defense of entrapment; that Slocum's testimony would establish that Levine had left the jurisdiction of the court and Texas after receiving consideration from the San Antonio Police Department; and that Levine and Slocum's testimony would demonstrate that the State had attempted to deprive the appellant of his right to compulsory process of witnesses.[3] The motion was denied and neither witness was present at the trial.[4]

The State denied any knowledge of Levine's whereabouts.

At a hearing on appellant's motion for a new trial, Slocum was called by the appellant. He testified that Levine had been a paid informer for the San Antonio police for a period of approximately 90 days. During that period of time, Levine had been paid approximately $4,000.[5]

Prior to September 1972, Officer Slocum informed Levine of a narcotics roundup. Levine responded that he was going to leave town, but that he did not have any money. Slocum replied that he thought it was a good idea to leave town, and that he would get Levine $75 to help him. Subsequently, Slocum gave Officer Doyal of the San Antonio police $75 to deliver to Levine for eating money. The payment to Levine was authorized by Slocum's superior, Captain Dupree.

The appellant contends that the State's action in paying Levine $75 to assist him in leaving town denied the appellant his right to compulsory process of witnesses. In *Sigard v. State,* 537 S.W.2d 736 (Tex.Cr.App. 1976), and *White v. State,* 517 S.W.2d 543 (Tex.Cr.App.1974), we addressed similar contentions and held adversely to the appellant's position. However, "[a] past mistake on the part of the Court is not a justification for committing the same mistake again." *Perez v. State,* 537 S.W.2d 455, 458 (Tex.Cr.App.1976) (Dissenting Opinion of Judge Douglas).

In *Sigard,* the dissenting opinion stated:

"The majority's apparent reliance, in reaching its decision, on the amount of the money given the missing witness by the State surprises me. Instead of asking whether the State's action was improper, the majority asks how much money was

---

**3.** The motion for continuance satisfied the requirements of Articles 29.03, 29.06, and 29.08, Vernon's Ann.C.C.P.

**4.** The appellant's motion for continuance and the testimony at a hearing on the motion reveal that citation was not issued for Levine and Slocum until September 2, 1975, the day the State revealed their involvement in the case. On September 3, 1975, the day that the trial on

the merits began, the appellant filed his sworn motion for continuance.

The testimony further reflects that the appellant, through the effort of his court-appointed private investigator, learned of Levine's identity sometime in August, 1975.

**5.** Slocum testified that Levine was paid less than $50 per case.

paid. Is the Court today holding that State action that successfully contributes to the disappearance of a material defense witness presents reversible error only if the State paid the entire bill? How much money paid to the witness would have changed the disposition of this case?

"The case should not turn on how much money was paid but, instead, on whether the action was successful and, if so, whether the State participated at all. The appropriate analysis for disposition of the issue is that set out in *White v. State,* supra, in the majority opinion on original submission. When a defendant asserts denial of compulsory process on the basis of State action rendering the witness unavailable, the relevant inquiries are (1) materiality of the witness, (2) timely pursuit by the defense, (3) knowledge of the materiality of the witness at the time of the State's action, and (4) improper action attributable to the State contributing to the witness' unavailability."

We are convinced that this fourfold test constitutes the proper inquiry. Of course, none of these factors by itself is either a necessary or sufficient condition to a finding that a defendant has been deprived of his right to compulsory process of witnesses. Rather, they are related factors which, in our opinion, must be considered together in a balancing process.

First, it does appear that Levine was a material witness. In the present case,[6] Levine could have either sustained or refuted the appellant's allegations of entrapment. In fact, Levine was a material fact witness. *James v. State,* 493 S.W.2d 201 (Tex.Cr. App.1973).

Second, the appellant timely pursued the identity and location of the paid informer Levine. In July 1975, the appellant requested a court-appointed private detective to assist in the preparation of the defense.

The trial judge granted this motion on July 18, 1975. The appellant's trial counsel instructed the private investigator to attempt to ascertain the identity of the informer. During August, 1975, the private investigator tentatively identified the informer as Jimmy Levine a/k/a Jimmy Martinez. On September 2, 1975, the State revealed the names and last known addresses of Jimmy Levine and Officer Slocum. Subpoenas were issued for Levine and Slocum on September 2, 1975. On September 3, 1975, the appellant's motion for continuance was filed. After a hearing was held on the motion, it was denied by the trial judge. The trial on the merits began on September 3, 1975. Although it can be argued that the appellant should have issued citation for Levine at an earlier date, the record reflects that he did so as soon as the State revealed Levine and Slocum's names and last known addresses. The appellant timely pursued Levine's presence at trial.

Third, the State was well aware of Levine's materiality in September 1972. Slocum testified that he was aware that Levine was a participant in at least a hundred cases.[7] More importantly, Slocum testified that Levine and Officer Chevera were explained the law of entrapment. It is inconceivable that when Slocum told Levine that the narcotic roundup would occur he was not aware that Levine might be a material witness to some of the cases. Indeed, Slocum acknowledged that Levine, or any informant for that matter, might be able to testify and refute false allegations by an undercover policeman. Therefore, the record reflects that Slocum knew that Levine was a material witness when he told Levine he would give him the money.

Finally, the State did engage in improper action contributing to the witness' unavailability. The record *does not* reveal that any agent of the State instructed Levine to leave town for the purpose of concealing

---

6. See *White v. State,* supra, and *Sigard v. State,* supra, for similar instances of Levine's materiality as a witness.

7. According to Officer Doyal's testimony, Levine was paid only $25 per case. Thus, if Slocum's testimony that Levine was paid over $4,000 was correct, then Levine was involved in over 160 cases.

evidence and depriving the appellant of the right to compulsory process. The record, however, does reflect that Slocum knew Levine was an active participant in making cases with Chevera, and that despite this knowledge, he actively participated in facilitating and encouraging Levine's departure. This participation included informing Levine of the narcotic roundup, Slocum's approval of Levine's plan to leave San Antonio, Slocum's promise of money to assist in Levine's departure, and the delivery of the money by Officer Doyal to Levine.[8] Moreover, the State's failure to obtain the intended future address of Levine, or even inquire into his intentions as to future residences, constitutes improper action by omission attributable to the State.

Considering all four factors above, it is clear that the appellant was denied his right to compulsory process under Article I, Section 10 of the Texas Constitution and the Sixth Amendment of the Constitution of the United States.[9] Accordingly, we overrule our previous holdings in *White v. State,* supra, and *Sigard v. State,* supra."

The judgment should be reversed and the cause remanded.

ODOM and PHILLIPS, JJ., join in this dissent.

---

**8.** We would add that if the State wanted an informant out of town *solely* for reasons of the informant's safety, it is not an onerous burden to require the State to obtain the informant's intended future address. Moreover, in our original opinion in *White v. State,* supra at 548, we stated:

'Whether Slocum's sole intent was for Levine's safety (which is not contended) is irrelevant. Just as the State's interest in confidentiality of an informer must yield in a proper case, despite its interest in encouraging and protecting him, so too must the informer be made available in a proper case. Other means are available for the protection of a material witness than sending him out of town and rendering him totally unavailable to either party.'

**9.** What we said in our original opinion in *White v. State,* supra at 548, is equally applicable here:

"What was here the case . . . was participation by the State in action which rendered a known material witness unavailable to appellant for the exercise of his constitutional right 'to present his own witnesses to establish a defense,' *Washington v. Texas* [388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019], supra. It is not the action of the witness acting alone, but the State's participation which constitutes the harm and requires reversal."