Opinion issued August
12, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00210-CR

———————————

Terry Hubbard, Appellant

V.

State of Texas, Appellee



 



 

On Appeal from the 273rd District
Court

Shelby County, Texas



Trial Court Case No. 08CR-17,456A

 



 

 

MEMORANDUM OPINION

 

          The
State charged Terry Hubbard with aggravated robbery as a habitual offender.  After trial, a jury found Hubbard guilty and
assessed a sentence of life in prison—a punishment within the legislatively
prescribed range for habitual offenders convicted of aggravated robbery.[1]  In three issues, Hubbard contends that (1)
the trial court erred in failing to grant him a continuance due to an absent
witness, (2) the trial court erred in refusing to submit a jury instruction on
the significance of cross-racial identification; and (3) the sentence
determined by the jury and imposed by the trial court violates the prohibition against
cruel and unusual punishment under the Eighth Amendment of the United States
Constitution.  We conclude that the trial
court did not abuse its discretion in denying Hubbard’s motion for a
continuance, that it did not err in refusing to submit the requested jury
instruction, and that the sentence imposed does not violate the Eighth
Amendment.  We therefore affirm.

Background

          On
January 26, 2008, Moises Ramirez contacted his co-worker, Chris Robertson,
about buying some stereo equipment.  Robertson
expressed interest and invited Ramirez to his home to facilitate the purchase.  When Ramirez drove up to Robertson’s home, he encountered
Robertson walking down the street with another man.  Robertson and the other man got into
Ramirez’s car and gave him directions to the location of the stereo equipment. 

During the drive, the man traveling
with Robertson pulled out a gun.  He
demanded money from Ramirez, and Ramirez gave the man his wallet.  The man passed the wallet to Robertson.  When Robertson could not find the $500 that
Ramirez had agreed to pay for the stereo equipment, Ramirez told the men where
they could find the money.  After Ramirez
divulged the money’s location, the men forced Ramirez from his truck.

          Robertson
put Ramirez’s truck in reverse and tried to back down the street but collided
with a tree.  Robertson and the gunman left
the truck, and the gunman fled on foot. 
Ramirez reported the incident to the police.  During the investigation, the police showed Ramirez
a photo lineup including a photo of Hubbard, whom Ramirez identified as the gunman
accompanying Robertson. 

Robertson made a phone call to Ramirez
after he learned that police officers had visited Ramirez’s home.  Robertson decided to cooperate with the police
and implicated Hubbard in the robbery.  Further
investigation revealed that Hubbard had been previously convicted of several
offenses, most recently as a habitual offender. 
As a result, the police charged Hubbard with aggravated robbery as a
habitual offender.  

          At
trial, Ramirez identified Hubbard as the man who entered his truck with
Robertson.  Robertson similarly testified
that Hubbard, whom he had known for several years, was with him on the day of
the robbery and had pulled a gun on Ramirez.  Robertson conceded his criminal past, current
probation, and the likelihood that he would go to jail if he were convicted for
his involvement in the robbery.  Ramirez also
admitted his illegal immigration status.  

          At
trial, Hubbard’s grandmother testified that Hubbard was at home with her on the
day of the robbery.  Her testimony
conflicted with that of the State’s witnesses.  After Hubbard’s grandmother testified, defense
counsel indicated that he intended to call Hubbard’s girlfriend, Ami Murphy, as
the only other witness.  Defense counsel had
Murphy served with a subpoena before trial.  The day before trial began, however, Hubbard discovered
that Murphy was missing.  On the first
day of trial, he obtained a writ of attachment.  After hearing Hubbard’s motion for
continuance, the trial court proceeded while police officers attempted to serve
the writ.  At the close of the defense case,
the court denied the continuance, but ruled that it would allow Murphy to
testify if she was found before the State finished its rebuttal.  After the State’s rebuttal, the trial court
called a brief recess.  The defense had
no success in locating Murphy.  Following
the recess, the trial court read the charge to the jury and counsel made their
closing arguments.




 

          At
several points during the trial, defense counsel discussed the issue of cross-racial
identification.  During voir dire,
counsel stated:

Defense counsel:   But
I do want to talk to y’all about eyewitness testimony; especially what we call
cross-racial identification. . . .

. . .

[O]ne of
y’all talked about the racial issue.  Mr.
Campbell, what do you think is a problem with the racial problem?

Juror:                   I
just—show my knowledge, I guess, of watching TV.  I saw a deal on TV where the number one
reason misidentifying black males. 

Defense
counsel:   Is anybody else familiar with
those studies? 

Defense counsel went on to address the
jurors’ specific experiences with misidentification based on race.  He raised the issue again during his
examination of one of the investigating officers:

Defense counsel:   My
question was, sir: are there problems associated with [eyewitness testimony],
and you said yes.  So my question to you
is what are the problems associated with it that caused you to answer yes to
that question?

Officer:                 Well,
they get some details incorrect; like color, types of vehicles, just a matter
of details.  But, it could cause a
problem if they got some of the small details wrong.

Defense counsel:   What
about situations where what I call cross-racial eyewitness testimony; where the
race of the witness is one thing and the perpetrator is another?  Are you aware that there are certain problems
with that that are over and above the regular eyewitness problem?   

Officer:                 I’ve
heard there is, but I’ve never had that problem.  

          The
trial court denied defense counsel’s request for a jury instruction on
cross-racial identification but allowed him to raise the issue during closing
argument.  Counsel explained to the jury:

Defense counsel:   Now,
here’s the important thing.  Remember
during voir dire when we talked about cross-racial identification and we talked
about the problems that exist, or can exist . . . .  Now, the reason why the cross-racial
identification is important is because people with different races look in and
they focus on one thing.  Or they focus
on what I call the major character. 

          The
jury found Hubbard guilty of aggravated robbery as a habitual offender and assessed
a sentence of life in prison.  Hubbard
timely appealed.

Discussion

I.       Denial of Motion for Continuance

          In
his first issue, Hubbard contends the trial court erred by denying his motion
for a continuance based on the absence of defense witness Ami Murphy.  See
Tex. Code Crim. Proc. Ann. arts. 29.06, 29.13 (Vernon 2006).




A.      Standard of review 

 

We review a trial court’s
ruling to grant or deny a motion for a continuance for an abuse of discretion.  Vasquez
v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).  An abuse of discretion occurs when the
defendant was actually prejudiced by the trial court’s denial of a motion for a
continuance. Gallo v. State, 239
S.W.3d 757, 764 (Tex. Crim. App. 2007).  

B.      Absence
of material witness 

Hubbard relies on articles 29.06 and
29.13 of the Texas Code of Criminal Procedure in contending that the trial
court erred in denying his motion for continuance.  In interpreting article 29.06, The Court of
Criminal Appeals has held that a
defendant seeking a continuance because of a missing witness must show: (1) the
defendant exercised due diligence in procuring the attendance of the witness,
(2) the witness is not absent by procurement or consent of the defendant, (3)
the motion was not made for the purpose of delaying the trial, and (4) the
facts expected to be proved by the witness.  Harrison v. State, 187 S.W.3d 429, 434
(Tex. Crim. App. 2005).  Even if the
defendant makes the requisite showing, however, the trial court still may deny
the continuance “[i]f the evidence does not indicate a probability that the
witness can be secured by a postponement, or if it appears that a continuance
due to the absence of the witness would delay the trial indefinitely, the
motion may be properly denied.”  Varela v. State, 561 S.W.2d 186, 191
(Tex. Crim. App. 1978), superseded on
other grounds by Bodin v. State, 807 S.W.2d 313, 316 (Tex. Crim. App.
1991); see also Rodriguez v. State,
21 S.W.3d 562, 566 (Tex. App—Houston [14th Dist.] 2000, pet. ref’d) (holding
that uncertainty surrounding witness’s availability to testify at trial
constituted sufficient grounds for denial of motion for continuance; appellant
had no knowledge of witness’s whereabouts and record did not show probability
that witness would have been located if continuance was granted).  

The record fails to provide a basis
for continuance in light of the circumstances surrounding Murphy’s
absence.  Defense counsel obtained a writ
of attachment as soon as he knew that Murphy would not testify in court of her
own volition.  In seeking to serve the
writ on Murphy, officers exhaustively searched areas that Murphy was known to
frequent.  They also contacted officials
in a neighboring city in an effort to locate Murphy.  Given that Hubbard had no information about Murphy’s
location or her reason for leaving the area, nothing shows that a continuance
would have aided Hubbard in securing her appearance.  Under these circumstances, Hubbard was not
entitled to a continuance under article 29.06. 
See Rodriguez, 21 S.W.3d at
566 (concluding that trial court did not abuse discretion in denying
continuance where attempts to locate witness had proven fruitless and nothing
indicated that she likely would have been secured if trial were postponed).

Hubbard’s alternative ground asserted,
article 29.13, provides:

A
continuance or postponement may be granted on the motion of the State or
defendant after the trial has begun, when it is made to appear to the
satisfaction of the court that by some unexpected occurrence since the trial
began, which no reasonable diligence could have anticipated, the applicant is
so taken by surprise that a fair trial cannot be had.

Tex. Code
Crim. Proc. Ann. art. 29.13.  This provision does not provide a basis for
Hubbard’s request for continuance because it applies only to events that occur
after the beginning of trial.  Hubbard
knew that Murphy disappeared before the
trial began.  Murphy’s absence thus does
not constitute “some unexpected occurrence since the trial began.”  See id.

Neither article 29.06 nor article
29.13 provides a basis for Hubbard’s motion for a continuance.  We therefore hold that the trial court did
not abuse its discretion in denying Hubbard’s motion for continuance.  

II.      Jury
Charge Error

Hubbard contends that the
trial court abused its discretion by refusing to submit his proposed jury
instruction on cross-racial identification to the jury.

A.      Standard of review 

We review a trial court’s
decision not to include a defensive issue in the jury charge for an abuse of
discretion.  Love v. State, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d).  A trial court abuses
its discretion if its ruling is outside the zone of reasonable disagreement.  Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).  

In order for charge error to be
reversible, the error also must have resulted in harm.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Our review, then, involves two steps: first we
determine whether error occurred and, if we conclude that it did, we determine whether
it resulted in sufficient harm to justify reversal.  Abdnor
v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).  

B. Instruction on cross-racial identification 

Hubbard’s counsel
requested a jury instruction like that proposed in the concurring opinion in United States v. Telfaire.  469 F.2d 552, 561 (D.C. Cir. 1972) (Bazelon,
C.J., concurring).  Appellant’s proposed
charge reads:

In this
case, the non-accomplice identifying witness [Moises Ramirez] is of a different
race than the defendant.  In the
experience of many, it is more difficult to identify members of a different
race than members of one’s own.  If this
is also your experience, you may consider it in evaluating the witness’s
testimony.  You must also consider, of
course, whether there are other factors present in the case that overcome any
such difficulty of identification.  For
example, you may conclude that the witness has had sufficient contacts with
members of the defendant’s race that he would not have greater difficulty in
making a reliable identification. 

          A
jury charge is intended to set “forth the law applicable to the case[,] not
expressing any opinion as to the weight of the evidence.”  Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon
2007).  It must accurately state
pertinent law and articulate all of the elements of the charged offense. Dinkins v. State, 894 S.W.2d 330, 339
(Tex. Crim. App. 1995).  

     A defendant is entitled to have the jury instructed
on all defensive issues raised by the evidence “regardless of whether the
evidence is ‘strong, feeble, unimpeached, or contradicted, and even when the
trial court thinks that the testimony is not worthy of belief.’”  Walters
v. State, 247 S.W.3d 204, 209
(Tex. Crim. App. 2007).  But, “if the
defensive theory is not explicitly listed in the penal code—if it merely
negates an element in the State’s case, rather than independently justifying or
excusing the conduct—the trial judge should not instruct the jury on it.”  Id.
(citing Giesberg v. State, 984 S.W.2d
245, 250 (Tex. Crim. App. 1998)). 

     The issue of cross-racial identification is
not grounded in the Texas Penal Code.  As
set forth in the proposed instruction, the issue attacks a central element of
the charged offense—namely, the identity of the defendant as the
perpetrator.  Accordingly, it is subsumed
in the general jury instruction given in this case:

If you entertain a reasonable doubt as to whether the
defendant was present at the time and place when and where the crime occurred,
you will find the defendant not guilty. 

 

Because the defensive issue is
adequately accounted for in the general charge to the jury, a special
instruction for the issue of cross-racial identification was unnecessary.  See Walters,
247 S.W.3d at 212; Giesberg, 984
S.W.2d at 250.  The trial court did not
err in refusing the proposed instruction. 


III.    Cruel and Unusual Punishment

Hubbard finally contends that the
trial court imposed a sentence of life in prison for aggravated robbery in
violation of the Eighth Amendment.  See U.S.
Const. amend. VIII.  Generally, a
punishment that falls within the legislatively prescribed range, and that is
based upon the sentencer’s informed normative judgment, is unassailable on
appeal.  Ex parte Chavez, 213 S.W.3d 320, 323–24 (Tex. Crim. App.
2006).  The Supreme Court of the United
States has used three proportionality criteria to review Eighth Amendment
complaints: (1) the gravity of the offense and the harshness of the punishment,
(2) the sentences imposed on other criminals in the same jurisdiction, and (3)
the sentences imposed for the same offense in other jurisdictions.  Solem v.
Helm, 463 U.S. 277, 292, 103 S. Ct. 3001, 3011 (1983).  The court reviewing the challenge considers
the second and third criteria only if the first is met.  See McGruder
v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)  Satisfying the initial criterion requires the
sentence to be grossly disproportionate to the crime—that is, when the severity
of the sentence is extreme when objectively compared to the gravity of the
offense.  See id.; Hicks v. State,
15 S.W.3d 626, 632 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  The gravity of the offense is determined by
evaluating the harm caused or threatened and the offender’s culpability.  Dale v.
State, 170 S.W.3d 797, 800 (Tex. App.—Fort Worth 2005, no pet.).

The jury found Hubbard
guilty of aggravated robbery, and Hubbard pleaded “true” to two enhancement
paragraphs that detailed two prior convictions for burglary of a building and another
prior conviction for aggravated assault that was enhanced because of his status
as a habitual offender.  Under those
circumstances, the legislatively prescribed punishment ranges from twenty-five
to ninety-nine years or life in prison. 
The jury returned a verdict of life in prison. 

Hubbard’s prior offenses
extend beyond those listed in the indictment, and the jury was free to consider
evidence of those additional crimes in determining Hubbard’s sentence.  Under a recidivist statute such as the Texas
habitual offender statute, a sentence is “based not merely on that person’s
most recent offense but also on the propensities he has demonstrated over a
period of time during which he has been convicted of and sentenced for other
crimes.”  Rummel v. Estelle, 445 U.S. 263, 284, 100 S. Ct. 1133, 1145 (1980);
see McGruder, 954 F.2d at 316.  Based on Hubbard’s status as a habitual
offender, the State “is entitled to place upon him the onus of one who is
simply unable to bring his conduct within the social norms prescribed” by Texas
criminal law.  See Rummel, 445 U.S. at 284, 100 S. Ct. at 1144.  “[The] primary goals [of a recidivist statute]
are to deter repeat offenders and, at some point in the life of one who
repeatedly commits criminal offenses serious enough to be punished as felonies,
to segregate that person from the rest of society for an extended period of
time.”  Id. at 284, 100 S. Ct. at 1144–45.  “[T]he point at which a recidivist will be
deemed to have demonstrated the necessary propensities and the amount of time
that the recidivist will be isolated from society are matters largely within
the discretion of the punishing jurisdiction.”  Id.
at 285, 100 S. Ct. at 1145.

The severity of the
sentence is objectively not extreme when viewed in light of the gravity of the
offense and Hubbard’s admitted status as a habitual offender.  It is therefore not a punishment that is
grossly disproportionate to the crime.  Hubbard
fails to satisfy the first prong of Solem.
 We hold that Hubbard’s life sentence
does not violate the Eighth Amendment.

Conclusion

We hold that the trial court did not
err in denying Hubbard’s motion for continuance.  We further hold that the trial court did not
abuse its discretion in denying Hubbard’s requested jury instruction.  Finally, we hold that the punishment assessed
by the jury and imposed by the trial court does not violate the Eighth
Amendment.  We therefore affirm the
judgment of the trial court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Sharp.

Do not publish.  Tex. R. App. P.
47.2(b).











[1]  The Supreme Court of Texas ordered the
transfer of this appeal from the Twelfth Court of Appeals to this Court.