Charles Antoine FRANKLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–91–055 CR.

Court of Appeals of Texas,
Beaumont.

June 16, 1993.

James A. DeLee, Port Arthur, for appellant.

Tom Maness, Dist. Atty., John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and
BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. After find-

ing appellant guilty of the offense, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life. The appeal to this Court raises four points of error, *viz:*

Point of Error 1: The trial court erred in failing to grant Appellant's timely motion for new trial, because the trial court had abused its discretion in denying Appellant's motion for continuance.

Point of Error 2: The evidence was insufficient to sustain a conviction.

Point of Error 3: The trial court erred in receiving prejudicial hearsay testimony, over Appellant's timely objection, as to what State's witness "had been told" or "led to believe."

Point of Error 4: The trial court erred in holding the evidence sufficient to sustain the conviction, when the State's proof failed to sustain specific descriptive averments made in the indictment, namely, that the Appellant did intentionally and knowingly cause the death of Mary Franklin by stabbing her with a knife.

In addressing appellant's first point of error, a description of pretrial circumstances will aid in our discussion. The record before us reflects that appellant's trial was set to begin on January 9, 1991. The transcript reflects that on January 4, 1991, appellant filed a "MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE."[1] The transcript further reflects that on January 8, 1991, at 4:15 p.m., appellant filed a "MOTION FOR CONTINUANCE." The pertinent portion of this motion provides the following:

The State made discovery available to the defense on January 5, 1991. At this time the name of an exculpatory witness was given to defense, one Mary Washington, who had informed the State she knew the defendant did not commit the alleged offense but had not revealed her sources. She also stated she knew who had committed the murders but did not know their complete names. Attempts have been made to locate the witness to no avail. It is imperative that this witness be located and her anticipated information be investigated.

A volume of the statement of facts reflects that the trial court afforded appellant a hearing on his motion for continuance prior to the start of the trial on January 9, 1991. The pertinent part of the proceeding is set out as follows:

THE COURT: Cause No. 56,737, State of Texas vs. Charles Franklin.

Let the record reflect the defendant is present along with his attorney, Mr. De-Lee.

The State is represented by Mr. Rodriguez.

Defense counsel has filed on January 8 at 4:00 (sic) P.M. motion for a continuance.

Would you like to address that motion orally or add anything to it?

MR. DELEE: Yes, Your Honor, if I may.

The Court commenting on the late date of filing, we have been attempting to locate the witness outlined in the motion, a Mary Washington. It became obvious we weren't going to be able to, certainly not within time to check out her testimony, to see if in fact the people that she alleged were the perpetrators of this crime, and also that the defendant, by virtue of that, could not be guilty. That is the purpose of the late date, this information was not given to the defense until the 5th of January, on a Saturday. When Mr. Rodriguez and I were going through the State's evidence and discovery, up to that time, we didn't know of the existence of Mary Washington and her purported testimony. We feel, and it is embodied in the motion that if what she says is true, that she knows that someone else committed this crime, then that should be investigated, at least, to determine that she is not telling the truth or to solve the crime for the benefit of

---

**1.** A handwritten notation in the lower left corner on the front page of the motion states, "Granted as to art. 39.14 & *Brady v. Maryland.*

All other denied. 1–9–91" This notation is signed by the trial judge.

the Court and the defendant and the ends of justice.

THE COURT: State's response?

MR. RODRIGUEZ: Your Honor, other than the fact that the information, confirming Mr. DeLee, the information was in fact provided on the early afternoon of Saturday, January 5th. I bring to the Court's attention that the witness in question, Mary Washington, was debriefed by a Port Arthur police officer in a hospital emergency room at the time of the statement that she made, alleging that she had other knowledge, that since that period of time she has made no effort to contact the State or the Port Arthur police (sic) Department to give any further information. She provided an address, which is the best address we have, and even that, Your Honor, I must admit, is more than a year old because that is how long ago she gave the information. Like also to bring to the Court's attention, if there will be a proffer at some point in time as to what she might have testified to, I would request that that proffer also include the fact that the officer who talked to her deemed her to be highly intoxicated at the time she made those statements. That is all.

THE COURT: Defense motion for a continuance is denied.

Let the record reflect that the Court's file also reflects that all the subpoenas for the witnesses by defense were also issued and filed with the Court on January 8 of 1991.

TEX.CODE CRIM.PROC.ANN. art. 29.06 (Vernon 1989), sets out the requirements for first motions for continuance filed by defendants.[2] To preserve the error, if any, in refusing a motion for continuance made because of an absent witness, appellant was required to file a sworn motion for new trial, stating the testimony he expected to present by the witnesses. *Varela v. State,* 561 S.W.2d 186, 191 (Tex.Crim.App. 1978); *Leach v. State,* 548 S.W.2d 383, 385 (Tex.Crim.App.1977); *Flores v. State,* 789 S.W.2d 694, 698–699 (Tex.App.—Houston [1st Dist.] 1990, no pet.). In the instant case, the transcript reflects that appellant's "MOTION FOR NEW TRIAL" is not sworn to nor does it contain an affidavit nor a showing under oath from some source that the witness would actually testify to the facts set out in the motion for new trial. *Varela, supra.* Indeed, we are unable to locate any evidence to indicate a probability that Ms. Washington's appearance and testimony could have been secured by a postponement. To the contrary, all of the information contained in appellant's written motion for continuance as well as the additional information provided to the trial court at the brief pretrial hearing on the motion indicates that the trial would have been delayed indefinitely if the continuance had been granted. In short, it appears that no one had a clue as to the whereabouts of Ms. Washington. Cases have long held that a trial court does not abuse its discretion in denying a motion for continuance where the evidence does not

2. In the first motion by the defendant for a continuance, it shall be necessary, if the same be on account of the absence of a witness, to state:

1. The name of the witness and his residence, if known, or that his residence is not known.

2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.

3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.

4. That the witness is not absent by the procurement or consent of the defendant.

5. That the motion is not made for delay.

6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. The truth of the first, or any subsequent motion, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If a motion for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the motion was of a material character, and that the facts set forth in said motion were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term.

indicate a probability that the missing witness can be located with the help of a postponement of the trial. *See, Kerns v. State*, 550 S.W.2d 91 (Tex.Crim.App.1977); *Prince v. State*, 158 Tex.Crim. 320, 254 S.W.2d 1006 (1953); *Brown v. State*, 129 Tex.Crim. 394, 87 S.W.2d 720 (1935). There was no abuse of discretion by the trial court in denying appellant's motion for continuance, nor any error by the trial court in overruling the motion for new trial. Point of error one is overruled.

■ Points of error two and four will be considered together as the complaints center on the insufficiency of the evidence to sustain the conviction. Appellate review of said complaints mandates our deciding whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have determined that the essential elements of the crime had been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839 (Tex.Crim.App.1991). *Jackson* contains the following insightful directive:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis in original)

*Jackson, supra* 443 U.S. at 319, 99 S.Ct. at 2789 61 L.Ed.2d at 573.

■ In situations where some or all of the State's evidence is circumstantial, such evidence is not tested by a different standard of review than direct evidence, but a conviction based upon circumstantial evidence cannot be sustained if the evidence

does not exclude every reasonable hypothesis other than the guilt of the defendant.[3] *Fuller v. State*, 827 S.W.2d 919 (Tex.Crim. App.1992). We are mindful of the following guidance provided in *Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984):

> In circumstantial evidence cases it is not necessary, however, that every fact point directly and independently to the defendant's guilt. It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Flores v. State*, supra; *Mills v. State*, 508 S.W.2d 823 (Tex. Cr.App.1974); *Herndon v. State*, 543 S.W.2d 109 (Tex.Cr.App.1976). The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Jones v. State*, 442 S.W.2d 698 (Tex.Cr.App.1969); *Taylor v. State*, 87 Tex.Cr.R. 330, 221 S.W. 611, 615 (Tex.Cr. App.1920); *Flores v. State*, supra, *Nathan v. State, supra* [611 S.W.2d 69] at p. 75 [ (Tex.Cr.App.1981) ].

■ In the instant case, while it is true that the State's case consisted entirely of circumstantial evidence, we feel that the "cumulative force of all of the incriminating circumstances" is sufficient for any rational trier of fact to have found each of the essential elements proven beyond a reasonable doubt. The evidence contained in the record before us indicates that the State's case consisted of proving that the victim, Mary Franklin, estranged wife of appellant, and the victim's mother were both found dead in a bedroom of the house of the victim's mother. The victim's death had been caused by multiple stab wounds

**3.** We recognize the fact that the use of the "reasonable hypothesis analytical construct" has been abandoned. *See, Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). However, as the *Geesa* holding is not to be retrospectively applied, appellant's sufficiency points must be decided pursuant to the analytical construct. *Id.*

to the chest area. There was testimony from both family members and a friend of the victim that appellant had threatened the lives of both the victim and her mother a week or two prior to the murders. The stated motives were that the victim was on the verge of instituting formal divorce proceedings and was also dating another man, and although the victim and appellant had been separated for approximately one year, appellant was apparently very upset by these actions.

Testimony was elicited from Darlene Welch, the daughter of Mary Franklin, that at about 3:05 p.m. on the day in question, she drove to the house on the way to pick up one of her children from school. Ms. Welch subsequently discovered the bodies of her mother and grandmother. Ms. Welch further testified that the only items initially discovered missing from the house were a claw hammer and a small axe both of which the victim kept near her bed. Ms. Welch stated that several days later she had occasion to examine the interior of the vehicle subsequently identified as the one being driven by appellant on the day of the murders. Inside the vehicle, Ms. Welch observed the victim's hammer. Also recovered from the vehicle was a coin purse belonging to the victim.

Further testimony from a neighbor, Clovis Harrison, indicated that on the day of the murders, appellant was seen at the house twice; the first time at about 7:00 a.m. and the second time between 10:00 a.m. and 10:30 a.m. On the second occasion, appellant parked his vehicle in the driveway, exited and walked toward the house. Testimony from another neighbor, Jeanette Marie Colvin, indicated that sometime late in the morning on the day in question, she and her mother heard a very loud scream. Both she and her mother quickly looked out the back door but saw no one in any of the yards up and down the street. Ms. Colvin confirmed that the scream was a scream of fright and was feminine in nature.

Significant testimony was elicited from Evelyn Simon, a mutual friend of both the victim and appellant. Ms. Simon stated that on the morning in question, she spoke, by telephone with the victim twice; once sometime shortly after 8:00 a.m. and once sometime between 10:15 a.m. and 10:30 a.m. Ms. Simon's direct examination continued as follows:

Q. (the State) Approximately what time did you call her?

A. (Ms. Simon) I will say maybe between 10:15 and maybe 10:30.

Q. Now when you called her back, at that point in time when you first talked to her again, how did her, during the second phone call, how did she seem emotionally?

A. She seemed fine. She said she was going—

MR. DELEE: (for appellant) Objection, hearsay, Your Honor.

THE COURT: Sustain the objection.

Q. I am going to have to ask you, Evelyn, as much as you may want to, to not discuss what specifically Mary may or may not have said to you.

A. Okay.

Q. While you were engaged in a second conversation between 10:15 and 10:30, did you come to believe Charles to be in the house?

A. Yes, I did.

MR. DELEE: Objection, Your Honor, that would be based on hearsay.

THE COURT: Overruled. See what she says and I will instruct the jury accordingly.

Q. Now your response was that you did come to believe he was in the house?

A. Yes.

Q. Once you made that determination in your mind, did Mary's demeanor or emotional state change?

A. Yes, it did.

Q. Were you able to understand anything that she was saying after that point?

A. Not exactly.

Q. Was she attempting to talk to you?

A. Yes, she was, but in a lower tone of voice than before.

Q. Did you at some point in time become unable to hear what was going on?

A. Yes.

Q. What did it sound like to you?

MR. DELEE: Objection, that would be hearsay, Your Honor.

THE COURT: Overruled.

Q. What did it sound like when you couldn't hear any more?

A. Sounded like someone was muffling with the telephone.

Q. When the telephone sound became muffled, did you call out to Mary over the phone?

A. Yes.

Q. Did she respond to you in any way.

A. Yes, she did.

Q. After a period of time did the telephone conversation end?

A. Yes, it did.

Q. Did she say goodbye?

A. No.

Q. What happened?

A. The phone went dead.

Q. After the phone went dead, what did you do?

A. I immediately tried to call her back. Well, at first I thought that the phone was dead because the cord was bad on the phone. And normally when we talk sometimes, when she moves she pulls the cord out and when she sticks it back in we will still be able to conversate (sic). So after a period of time after the phone was dead she did not call me back I immediately tried to call her back.

Q. What happened when you tried to call her back?

A. The line was busy.

Q. Did you ever get through to her again?

A. No, sir.

Q. Did you continue to try during the day?

A. Yes, sir, I did.

Q. Did you ever get in contact with anyone at the house after that?

A. No, sir.

Testimony was next elicited from investigative personnel of the Port Arthur Police Department. Identification Technician, Randy Tomplait, testified that his search of the entire house turned up only one of appellant's fingerprints. That print was located on the "pull knob" of a kitchen drawer. Upon inspecting the contents of the drawer, Officer Tomplait observed "[y]our basic kitchen utensils, spoons, forks, knives, peelers and various kitchen utensils." [4] Police testimony also indicated that the residence showed no signs of forced entry, nor any signs that a burglary had taken place. The police did find the telephone that the victim had apparently been using while conversing with Ms. Simon. This phone was located in the bedroom where both bodies were found. Also found were two pieces of what appeared to be the telephone cord with the pieces appearing to have been cut from the telephone itself.

Detective Terry Dunahoe testified that on the evening of the murders, at about 8:45 p.m., appellant voluntarily came to the police station. Detective Dunahoe noticed that appellant had cuts on his right hand and knuckles, including "a slice between his thumb and forefinger and also another slice on the middle finger on the inside portion of his hand." The cuts appeared to be fresh. Detective Dunahoe related that appellant voluntarily consented to a search of the vehicle he was operating. The search turned up the claw hammer previously identified as having belonged to the victim.

Finally, Dr. Thomas Molina, the pathologist who performed the autopsies on the victim and her mother, was called to testify. He testified that the cause of death of the victim was from stab wounds inflicted upon her. While no weapon was recovered during the subsequent investigation of the murders, Dr. Molina opined the wounds to have been inflicted by a knife. Dr. Molina reiterated this belief several times during his testimony which included the following exchange on cross-examination:

---

**4.** Previous testimony had established, however, that appellant was an almost daily visitor to the house. Also recall that appellant had been at the house at about 7:00 a.m. on the morning of the murders.

Q. (counsel for appellant) Could this instrument have been, this instrument could have been a knife. Right?

A. (Dr. Molina) Yes, sir.

Q. Could it have been an ice pick?

A. It would be unlikely for this to be an ice pick, sir. My opinion this was caused by a knife.

Q. Could it have been a sharp piece of plastic, maybe?

A. It would have to be extremely sharp. It would have to be very similar to cutting edge to a knife, yes, but everything possible.

Q. How about a sliver of glass?

A. If you would have a very nice edge, yes, it is possible, sir.

Q. Possible for any of those, not necessarily caused by a knife?

A. That is correct, sir. But you have to always give also your best interpretation.

Q. Yes, sir.

A. Depending on, as you know, in the main post mortem findings I just described as a stab wound with perforation. In my opinion I might say in addition to the multiple stab wounds to have been caused by sharp object such as a knife.

Q. You are not saying it was caused by a knife?

A. But the most, my first choice would be that they were caused by a knife.

It is clear to us that, try as he might, appellant's counsel was unable to shake the doctor's "first choice" for the instrument of death, that being a knife.

The record before us reflects that appellant's attempt at an alternate reasonable hypothesis consisted of some rather confusing testimony elicited from his daughter, Alisa Marie Franklin, a sixteen year old high school student. Ms. Franklin testified that on the day of the murders she was attending Lincoln High School, and was in her third period class. Ms. Franklin stated that she went to the nurse's office during the class period and used the phone to call appellant. The time was somewhere between 10:15 a.m. and 10:25 a.m. according to Ms. Franklin. Ms. Franklin stated that she called her aunt's house and talked to appellant. Appellant called several other witnesses to the stand in his defense, but none were able to account for appellant's whereabouts during the period from about 10:15 a.m. to 10:45 a.m. on the day of the murder, except for Alisa. Appellant did not testify.

The State called the principal of Lincoln High School, Melvin Getwood, Jr., as a rebuttal witness. Mr. Getwood's testimony essentially consisted of proving that, according to school documents, Ms. Franklin attended school on the day in question and was not excused from any of her classes in order to go to the nurse's office. Mr. Getwood also produced the school nurse's logbook in which Ms. Franklin's name did not appear on the day in question. We note the fact that the trial court provided the jury with an instruction on the defense of alibi.

■ After a careful examination of the entire record before us in the light most favorable to the prosecution, we find that any rational trier of fact could have found each essential element to have been proven beyond a reasonable doubt, including the allegation of a knife as the instrument of death. The only alternate hypothesis that could be considered even remotely "reasonable" was his daughter's alibi testimony. As mentioned above, this issue was submitted to the jury and resolved adversely to appellant. The factfinder is always in the better position *vis à vis* an appellate court when viewing evidence as the factfinder is viewing it firsthand and can take note of the demeanor and expressions of the witnesses. The factfinder's verdict must stand unless it is found to be irrational or unsupported by the evidence when said evidence is examined under the *Jackson v. Virginia* light. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Points of error two and four are overruled.

■ Appellant's third point of error bases its complaint on a portion of Evelyn Simon's direct examination testimony. Recall that Ms. Simon testified that she had telephoned the victim between 10:15 a.m. and 10:30 a.m. the day of the murders.

The specific testimony of which appellant now complains occurred as follows:

Q. (the State) While you were engaged in a second conversation between 10:15 and 10:30, did you come to believe Charles to be in the house?

A. (Ms. Simon) Yes, I did.

MR. DELEE: Objection, Your Honor, that would be based on hearsay.

THE COURT: Overruled. See what she says and I will instruct the jury accordingly.

Q. Now your response was that you did come to believe he was in the house?

A. Yes.

Appellant's brief provides, "There can be no question that the State wished to elicit what the victim had said and/or how she was reacting to what was happening or being said on the other end of the telephone line. In either regard, this is hearsay and should not have been admitted to (sic) evidence. Tex.R.Crim.Evid. 801." TEX.R.CRIM.EVID. 803 provides a list of *exceptions* to the general rule on the inadmissibility of hearsay. Rule 803(1), entitled "Present sense impression," states that the following is not excluded by the hearsay rule, where the availability of the declarant is immaterial, "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Based on this exception, we find that the trial court properly permitted Ms. Simon to respond with her belief that appellant was in the bedroom with the victim. As we read her testimony in the record before us, Ms. Simon could have reached this conclusion in one of two ways.

First, Ms. Simon could have personally heard appellant's voice through the telephone receiver and, having known appellant all of her life, could have concluded that appellant had entered the victim's bedroom. Such testimony based upon a witness's own personal sensory observation is obviously not hearsay. The second way Ms. Simon could have reached that conclusion was to have the victim verbally relate the fact that appellant had just entered the room. In this instance, Ms. Simon's testimony would be admissible based upon the exception previously described under Rule 803(1) as Ms. Simon was merely relating the victim's immediate visual perception of appellant's entrance into the bedroom. *See, Rabbani v. State*, 847 S.W.2d 555 (Tex.Crim.App.1992). Therefore, the trial court did not err in overruling appellant's hearsay objection. Point of error three is overruled and the judgment and sentence of the trial court is affirmed.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

Appellant's point of error number one, in its major thrust, avers that the trial court erred in failing to grant the appellant's timely motion for a new trial. That alleged error, appellant insists, is because the trial court had previously abused its discretion in denying the appellant's motion for a continuance. The trial was set on the merits on January 9, 1991. On January 4, 1991, appellant filed a "MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE". The State complied. The record clearly demonstrates that the appellant was basing trial error on the theory that the name of an allegedly exculpatory witness had been given to the defense on January 5, 1991. This witness was not available at trial. The exculpatory witness was alleged to be one Mary Washington. The appellant's position was that it was imperative that Mary Washington be located. Additionally, Mary Washington's anticipated information should be investigated.

Appellant at the hearing on the motion for continuance did not unequivocally state that the information Mary Washington possessed was credible. Appellant's contention was that this information needed to be investigated and checked out. Mary Washington was said to have made a statement that she knew who had committed the murders but that she did not know the killers' complete names. She also stated that the appellant did not commit the alleged murders. Mary had, according to the record, made these statements to a police officer in a hospital emergency room. An observer in the hospital emergency room deemed

this exculpatory witness to have been highly intoxicated at the time she made the exculpatory statements.

TEX.R.APP.P. 30 deals with motions for new trials in criminal cases and the hearings thereon. The hearing takes place after a finding or verdict of guilt. Rule 30(b) sets out the reasons for the granting of a new trial. Subsection (5) provides for the granting of a new trial where a material witness of the defendant has by force, threats, or fraud been prevented from attending court, or where evidence tending to establish the innocence of the accused has been intentionally destroyed or withheld preventing the production of that evidence at trial. Appellant does not contend for relief under subsection (5). Subsection (6), I think, is the appropriate one. But appellant has failed to show diligence.

TEX.R.APP.P. 31 sets out the time to present the motion and authorizes the trial court to conduct a hearing on the same. At the hearing evidence may be introduced by affidavit or otherwise to determine the issues.

The motion for new trial was filed on February 8, 1991. The finding of the guilt of the defendant for the offense of murder—the jury's verdict—had been returned on January 14, 1991. Appellant's motion for new trial does not allege that any efforts had been made by the appellant through his investigator or otherwise to locate the witness since the date of the hearing on the original motion for continuance. In fact, Mary Washington's name is not mentioned in the motion for new trial.

Furthermore, it appears that there was no hearing on the motion for new trial; nor was there any evidence or testimony taken in connection with the motion for new trial. The unverified motion does not set out that the appellant had used due diligence to locate Mary Washington since the date of the motion for continuance.

It appears that the motion for new trial simply does not comport to TEX.R.APP.P. 30 and 31. Rule 31 provides that the defendant shall present his motion for new trial to the court; appellant did not do so. The motion for new trial was properly overruled; the appellant has not shown error in the trial court's action in overruling the motion for new trial. There was no showing by the appellant that between the time the motion for continuance was filed and the time that the motion for new trial was filed that any diligent efforts or any efforts whatsoever had been made to locate the potential witness, Mary Washington.